COMMONWEALTH MUTUAL FIRE INSURANCE CO., W. B. Stevens, Receiver, v. EDWARDS & BROUGHTON.

(Decided March 7, 1899).

*Foreign   Corporations — Receivers—Assessments—Statute of Limitations—Demurrer.*

1. The statute of limitations is available as a defence only by answer. The Code, section 138. The rule does not apply to possessory titles, which are more in the nature of presumptions than strict limitations.

2. A foreign fire insurance company must take out license and comply with the requirements of section 3062 of The Code before doing business in this State—otherwise, it can not maintain an action for any assessment or other liability arising under the policy. Such action is demurrable.

3. When such foreign corporation has complied with our laws, our courts are open to it for the enforcement of its rights—and should it become insolvent and pass into the hands of a Receiver—he, by comity, will be allowed to sue here to enforce the liability of a policy holder.

4. Where a citizen of this State applies for a policy in a foreign company through a broker here, and the application is accepted and the policy is delivered, the broker will be deemed to be the agent of the company, and the contract to be made here, subject to the laws of this State. Act of 1893, chapter 299, section 8.

CIVIL ACTION, instituted in the Justice's Court of WAKE County, to enforce assessments upon two policies of insurance. There were written pleadings, complaint and demurrer. The demurrer was sustained, and an appeal taken to the Superior Court, and tried before *Brown, J.,* February 2, 1899, who overruled the demurrer with leave to the defendants to answer.

The defendants appealed.

The principal grounds of the complaint and demurrer are stated in the opinion.

*Messrs. Douglass & Simms,* for defendants (appellants).
*Messrs. J. W. Hinsdale* and *Perrin Busbee,* for plaintiffs.

DOUGLAS, J., delivered the opinion.
FAIRCLOTH, C. J., dissents.

DOUGLAS, J.  This is an action brought by the receiver of a mutual insurance company for the collection of certain assessments upon the defendants, levied under a decree of the Superior Judicial Court. of the State of Massachusetts. The case comes before us on demurrer.  This disposes *in limine* of all statutes of limitation, which, in cases like the present, can be availed of only by answer.  The Code, section 138; *Guthrie v. Bacon,* 107 N. C., 337; *Randolph v. Randolph, Ibid.,* 506; *Albertson v. Terry,* 109 N. C., 8. This rule, however, does not apply to possessory titles, which are more in the nature of presumptions than strict limitations.  *Freeman v. Sprague,* 82 N. C., 366; *Asbury v. Fair,* 111 N. C., 251.

The following allegations. appearing in the complaint must be taken as facts for the purposes of this appeal:  The plaintiff corporation issues to the defendants two policies of fire insurance—one for $2,000, dated June 29, 1894, and the other for $3,000, dated July 14, 1894.  It was stipulated in the policies that the insured should pay, in addition to the cash premium, all such sums as might be lawfully assessed by the directors of said company, but not to exceed three times the amount of said cash premium.  The present assessments are within the limit.  The policies were obtained and delivered through a local agent, denominated a broker by the plaintiff, but whose legal status, as between the parties,

is a question of law on admitted facts.   On March 19, 1895,
suit was brought by the Insurance Commissioner of Massa-
chusetts to wind up the affairs of the plaintiff company, and
on May 28, 1895, the plaintiff Stevens was appointed re-
ceiver, to whom the company, on the 7th day of March, 1896,
executed an assignment of all its assets.   After the institu-
tion of the suit, to-wit, on March 7th, 1896, the directors
of the plaintiff corporation, in accordance with a decree in
the cause, levied "an assessment of $250,000 upon the
former and present members of the corporation liable
thereto, the same being necessary for the payment of losses
incurred after the issue of the policies held by the members
of the said corporation, and before their respective expira-
tion or cancllation, and while the said defendants and the
other policy holders against whom the said assessment was
made were members of said corporation, and the expenses of
collecting and the expenses of the receivership for which the
defendants, together with the other policy holders and mem-
bers, were liable."   It is further alleged that all the proceed-
ings were had in all respects in conformity to sections 47
and 49 of chapter 522 of the Laws of the State of Massachu-
setts of 1894, which, in the absence of an answer, we pre-
sume, govern the proceedings in such cases.

There are other allegations in amplification of the above,
and also as to notice, individual assessment and non-pay-
ment, with the important averment that the plaintiff cor-
poration complied with the requirements of section 3062 of
The Code of North Carolina, and received license to trans-
act the business of fire insurance on the 2nd day of July,
1894.   This was subsequent to the issuing of the first policy,
but previous to the second policy.

The learned counsel for the plaintiff say in their brief
that "If policy No. 4214, dated June 29, 1894, were made

in North Carolina, of course it would be void and the assessment could not be collected." We think that in contemplation of law it was made in North Carolina, and that the broker, in taking the applications for the policies, acted as the agent of the plaintiff corporation. Section 8 of chapter 299 of the Public Laws of 1893 provides that "all contracts of insurance, the application for which is taken within the State, shall be deemed to have been made within this State and subject to the laws thereof." Therefore the plaintiffs can not maintain their action for any assessment or other liability arising under the policy dated June 29, 1894.

Our attention has been called to chapter 383 of the Laws of 1889 allowing any citizen of this State to contract on his own account for insurance with any company doing an insurance business outside of the State, and allowing the company *to be sued* and to adjust the loss without being subject to penalties for taxes. We do not question the right of any citizen to apply outside the State for insurance, but in the present case the application was made within the State, and therefore subject to the Act of 1893. The Act of 1889 allows an outside company, that is, one that has not complied with our laws, to be sued, but not to sue. Its evident purpose was to allow such companies to adjust their fire losses without thereby making themselves liable for penalties or taxes. It certainly never intended to permit such companies to practically nullify our insurance laws by the legal fiction of doing business through a broker instead of an agent. To do so would ultimately turn over our vast insurance business to foreign corporations whose solvency we had no means of ascertaining, and who not only contributed nothing to our revenues, but who ignored our laws and were practically beyond our jurisdiction. Our insurance laws, applicable equally to domestic and to foreign corporations,

are intended not simply for purposes of revenue, but prima-
rily for the protection of our people.   The vast bulk of in-
sured property is never burned, and those who continue to
pay their premiums for perhaps a long series of years with
no resulting loss or profit beyond the feeling of protection,
have the right to demand the fullest security.   In the case
at bar the plaintiff corporation admitted its insolvency
within less than ten months after it issued its policies to the
defendants, and it was then apparently worth $250,000 less
than nothing.   When or how it became insolvent, if it were
ever solvent, we have no means of knowing.   In the light of
these facts, can there be any question as to the justice or
policy of our insurance laws?

The prevailing tendency to corporate absorption can not
be ignored, and it is the increasing duty of the State, while
giving to all corporations the equal protection of its laws,
to equally protect its citizens against corporate abuses.   There
should be no prejudice against corporations simply because
they are corporations.   They are not outlaws, but are the
creatures of the law, and are not only capable of becoming
the most powerful agencies of civilization, but have become
absolutely necessary in our present stage of material develop-
ment.   They can be justly condemned only when their pow-
ers are abused, but in proportion as their powers are greater
than those of an individual, they are more liable to abuse
and should be more carefully guarded.   One of their great
dangers is the risk of insolvency arising from the want of
any personal liability of their stockholders, and the uncertain
and perhaps fictitious nature of their assets.   Some are
afflicted with what may be called *congenital* insolvency.   They
are born insolvent, capitalized into insolvency at the mo-
ment of their creation, and eke out a precarious existence
in an apparent effort to solve the old paradox of living on

the interest of their debts. Such corporations are not only intrinsically dangerous, but lay the foundation for an unjust suspicion of all other corporate bodies.

The State of North Carolina extends to all foreign corporations a cordial welcome, with the fullest measure of domestic equality, but with her rests the right and the duty of requiring them to comply with such reasonable regulations as may be necessary for the protection of her own people. In upholding such laws we are influenced not only by the letter of the statute, but equally so by the highest principles of justice and of public policy.

This finally disposes of the first policy of insurance, but as to the second policy we think a sufficient cause of action has been stated in the complaint. There are twenty-three stated grounds of demurrer, but as many of them are in the nature of defences that can be set up only by answer, while others present different views of the same question, it is not necessary to consider them separately.

At this stage of the case we must assume that the suit in Massachusetts was properly conducted, and we see no reason why the Courts of that State should not wind up the affairs of its own insolvent corporation. Nor is there any objection to the receiver of a foreign Court suing in the Courts of this State. What may be the result of that suit is a different matter, but he will be given a hearing. It is true that in *Kruger v. Bank,* 123 N. C., 16, we thought that it was too severe a strain upon the law of comity to permit a foreign receiver, refusing to become a party to the action, to enter a special appearance simply for the purpose of obstructing the administration of our laws and defeating the rights of our citizens. Such is not the case before us. The complaint substantially alleges that the assessment was necessarily and properly levied to meet obligations while the policy of the de-

fendants was in force. In the absence of any denial this would entitle the plaintiffs to recover as to the second policy. What defensive facts may be set up in the answer we do not know, and we can not now properly determine how far the defendants may attack the amount of validity of their individual assessment. There is no merit in the contention of the defendants that the second policy is void under section 6 of the Acts of 1893, chapter 299, because it provided for assessments. The standard policy specifically permits such necessary alterations in the case of assessment companies, and the Act of 1895 was not intended to exclude, by indirection, assessment companies who had otherwise complied with our laws. Its purpose was, as stated in *Horton v. Insurance Co.,* 122 N. C., 498, 507, "to have a uniform policy which would eventually become familiar to our people, and by repeated adjudications acquire a settled meaning."

For the reasons stated above the demurrer should have been sustained as to the first policy. With this modification, the judgment of the Court below overruling the demurrer is affirmed, but in view of the modification the costs in this Court will be equally divided between the parties.

Modified and affirmed.

FAIRCLOTH, C. J., dissents.