This is an action brought by the receiver of a mutual insurance company for the collection of certain assessments upon the defendants, levied under a decree of the Superior Judicial Court of the State of Massachusetts. The case comes before us on demurrer. This disposes in limine of all statutes of limitation, which, in cases like the present, can be availed of only by answer. The Code, sec. 138; *Page 104 Guthrie v. Bacon, 107 N.C. 337; Randolph v. Randolph, ib., 506;Albertson v. Terry, 109 N.C. 8. This rule, however, does not apply to possessory titles, which are more in the nature of presumptions than strict limitations. Freeman v. Sprague, 82 N.C. 366; Asbury v. Fair, 111 N.C. 251.
The following allegations appearing in the complaint must be taken as facts for the purposes of this appeal; The plaintiff corporation issues to the defendants two policies of fire insurance — one for $2,000, dated 29 June, 1894, and the other for $3,000, dated 14 July, 1894. It was stipulated in the policies that the insured should pay, in addition to the cash premium, all such sums as might be lawfully assessed by the directors of said company, but not to exceed three times the amount of said cash premium. The present assessments are within the limit. The policies were obtained and delivered through a local agent, denominated a broker by the plaintiff, but whose legal status, as between the parties, is a question of law on admitted facts. On 19 March, 1895, suit (118) was brought by the Insurance Commissioner of Massachusetts to wind up the affairs of the plaintiff company, and on 28 May, 1895, the plaintiff, Stevens, was appointed receiver, to whom the company, on 7 March, 1896, executed an assignment of all its assets. After the institution of the suit, to wit, on 7 March, 1896, the directors of the plaintiff corporation, in accordance with a decree in the cause, levied "an assessment of $250,000 upon the former and present members of the corporation liable thereto, the same being necessary for the payment of losses incurred after the issue of the policies held by the members of the said corporation and before their respective expiration or cancellation, and while the said defendants and the other policyholders against whom the said assessment was made were members of said corporation, and the expenses of collecting and the expenses of the receivership for which the defendants, together with the other policy holders and members, were liable." It is further alleged that all the proceedings were had in all respects in conformity to sections 47 and 49, chapter 522, Laws 1894, of Massachusetts, which, in the absence of an answer, we presume, govern the proceedings in such cases.
There are other allegations in amplification of the above, and also as to notice, individual assessment and nonpayment, with the important averment that the plaintiff corporation complied with the requirements of section 3062 of The Code of North Carolina and received license to transact the business of fire insurance on 2 July, 1894. This was subsequent to the issuing of the first policy, but previous to the second policy.
The learned counsel for the plaintiffs say in their brief that "If policy No. 4214, dated 29 June, 1894, were made in North Carolina, of course *Page 105 
it would be void and the assessment could not be collected." We (119) think that in contemplation of law it was made in North Carolina, and that the broker, in taking the application for the policies, acted as the agent of the plaintiff corporation. Section 8, chapter 299, Laws 1893, provides that "all contracts of insurance, the application for which is taken within the State, shall be deemed to have been made within this State and subject to the laws thereof." Therefore the plaintiffs cannot maintain their action for any assessment or other liability arising under the policy dated 29 June, 1894.
Our attention has been called to chapter 383, Laws 1889, allowing any citizen of this State to contract on his own account for insurance with any company doing an insurance business outside of the State, and allowing the company to be sued and to adjust the loss without being subject to penalties for taxes. We do not question the right of any citizen to apply outside the State for insurance, but in the present case the application was made within the State, and therefore subject to the act of 1893. The act of 1889 allows an outside company, that is, one that has not complied with our laws, to be sued, but not to sue. Its evident purpose was to allow such companies to adjust their fire losses without thereby making themselves liable for penalties or taxes. It certainly never intended to permit such companies to practically nullify our insurance laws by the legal fiction of doing business through a broker instead of an agent. To do so would ultimately turn over our vast insurance business to foreign corporations whose solvency we had no means of ascertaining, and who not only contributed nothing to our revenues, but who ignored our laws and were practically beyond our jurisdiction. Our insurance laws, applicable equally to domestic and to foreign corporations, are intended not simply for purposes of revenue, but primarily for the protection of our people. (120) The vast bulk of insured property is never burned, and those who continue to pay their premiums for perhaps a long series of years with no resulting loss or profit beyond the feeling of protection, have the right to demand the fullest security. In the case at bar the plaintiff corporation admitted its insolvency within less than ten months after it issued its policies to the defendants, and it was then apparently worth $250,000 less than nothing. When or how it became insolvent, if it were ever solvent, we have no means of knowing. In the light of these facts, can there be any question as to the justice or policy of our insurance laws?
The prevailing tendency to corporate absorption cannot be ignored, and it is the increasing duty of the State, while giving to all corporations the equal protection of its laws, to equally protect its citizens against corporate abuses. There should be no prejudice against *Page 106 
corporations simply because they are corporations. They are not outlaws, but are the creatures of the law, and are not only capable of becoming the most powerful agencies of civilization, but have become absolutely necessary in our present stage of material development. They can be justly condemned only when their powers are abused, but in proportion as their powers are greater than those of an individual, they are more liable to abuse and should be more carefully guarded. One of their great dangers is the risk of insolvency arising from the want of any personal liability of their stockholders, and the uncertain and perhaps fictitious nature of their assets. Some are afflicted with what may be calledcongenital insolvency. They are born insolvent, capitalized into insolvency at the moment of their creation, and eke out a precarious existence in an apparent effort to solve the old paradox of living on the interest of their debts. Such corporations are not only (121) intrinsically dangerous, but lay the foundation for an unjust suspicion of all other corporate bodies.
The State of North Carolina extends to all foreign corporations a cordial welcome, with the fullest measure of domestic equality, and with her rests the right and the duty of requiring them to comply with such reasonable regulations as may be necessary for the protection of her own people. In upholding such laws we are influenced not only by the letter of the statute, but equally so by the highest principles of justice and of public policy.
This finally disposes of the first policy of insurance, but as to the second policy we think a sufficient cause of action has been stated in the complaint. There are twenty-three stated grounds of demurrer, but as many of them are in the nature of defenses that can be set up only by answer, while others present different views of the same question, it is not necessary to consider them separately.
At this stage of the case we must assume that the suit in Massachusetts was properly conducted, and we see no reason why the courts of this State should not wind up the affairs of its own insolvent corporation. Nor is there any objection to the receiver of a foreign court suing in the courts of this State. What may be the result of that suit is a different matter, but he will be given a hearing. It is true that in Kruger v. Bank, 123 N.C. 16, we thought that it was too severe a strain upon the law of comity to permit a foreign receiver, refusing to become a party to the action, to enter a special appearance simply for the purpose of obstructing the administration of our laws and defeating the rights of our citizens. Such is not the case before us. The complaint substantially alleges that the assessment was necessarily and properly levied to meet obligations while the policy of the defendants (122) was in force. In the absence of any denial this would entitle the *Page 107 
plaintiffs to recover as to the second policy. What defensive facts may be set up in the answer we do not know, and we cannot now properly determine how far the defendants may attack the amount of validity of their individual assessment. There is no merit in the contention of the defendants that the second policy is void under section 6, chapter 299, Laws, 1893, because it provided for assessments. The standard policy specifically permits such necessary alterations in the case of assessment companies, and the act of 1895 was not intended to exclude, by indirection, assessment companies who had otherwise complied with our laws. Its purpose was, as stated in Horton v. Ins. Co., 122 N.C. 498, 507, "to have a uniform policy which would eventually become familiar to our people, and by repeated adjudications acquire a settled meaning."
For the reasons stated above the demurrer should have been sustained as to the first policy. With this modification, the judgment of the court below overruling the demurrer is affirmed, but in view of the modification the costs in this Court will be equally divided between the parties.
MODIFIED AND AFFIRMED.
FAIRCLOTH, C. J., dissents.
Cited: Person v. Leary, 127 N.C. 115; Lacy v. B. L. Assn.,132 N.C. 132; Lacy v. Packing Co., 134 N.C. 571; Abernathy v. R. R.,159 N.C. 343; Hay v. Ins. Co., 167 N.C. 85; Williams v. Order ofHeptasophs, 172 N.C. 789.
(123)