W. G. FOUNTAIN v. WEST LUMBER COMPANY.

(Filed 4 December, 1912.)

**1. Principal and Agent—Trusts and Trustees—Corporations—Officers—Lawful Acts—Presumptions.**

An ordinary contract made by the president of a corporation with respect to the corporate property is presumed to be lawful.

**2. Same—Contracts.**

Where one, as in this instance, the president of a corporation, contracts with reference to property which he holds as agent or in trust, and signs the contract individually, but is in fact therein acting as agent, he binds the principal to the transaction.

**3. Principal and Agent—One-man Corporation—Fraudulent Devices—Evidence—Questions for Jury.**

J. owned practically all of the stock in two corporations, the W. Co. and the J. Co., and with them, and by himself indi-

vidually, was conducting a lumber business from the same office. He contracted with the plaintiff to move his sawmill on certain lands and cut the timber therefrom, and fell into arrears of payment, whereupon the plaintiff filed a lien against J. and the J. Co., but finding the timber rights were in fact owned by the W. Co., immediately filed a lien against them and brought this action. J. and the J. Co. went into bankruptcy and the W. Co. set up the defense that the W. Co. had sold the right to cut the timber to the J. Co. and that J. had made the contract in its behalf or in behalf of himself: *Held,* evidence was sufficient to be submitted to the jury as to whether J., in making the contract, was acting *bona fide* in behalf of himself or the J. Co., or whether the separate corporations were used as a device to avoid responsibility on the part of the W. Co.

APPEAL by defendant from *Ferguson, J.,* at April Term, 1912, of ONSLOW.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*G. V. Cowper, Duffy & Koonce for plaintiff.*
*D. E. Henderson and Frank Thompson for defendant.*

CLARK, C. J. The defendant, the West Lumber Company, owned the trees and timber rights on a tract of land in Onslow, known as the "Turkey Pond tract on the Venters land." C. R. Johnson of Norfolk, Va., was president and secretary and owned practically all of the stock of the said company. He was also president and owned practically all the stock in the C. R. Johnson Lumber Company, and was also doing an individual business in his own name. All these different businesses dealt in lumber and timber and were conducted from the same office in the Bank of Commerce Building, Norfolk, Va. In 1909, C. R. Johnson contracted with the plaintiff to remove his sawmill to said "Turkey Pond" tract for the purpose of cutting and manufacturing the timber into boards, shingles, etc. The payments due the plaintiff for said work fell in arrears $1,200, and the plaintiff, under the advice of counsel, who thought that the timber rights were owned by the Johnson Lumber Company and C. R. Johnson, filed a lien against them. Upon investigation, finding that the timber rights were in fact owned by the West Lumber Company, the plaintiff immediately filed a lien against

them and brought this action. C. R. Johnson and the C. R. Johnson Lumber Company went into bankruptcy. Under the bankrupt proceedings all the *property* was claimed by the West Lumber Company, which was not in bankruptcy, while all the *debts* became the peculiar and exclusive assets of the bankrupts.

There were many exceptions to the evidence, but the only real vital question presented is whether there was sufficient evidence to go to the jury tending to prove that when C. R. Johnson contracted with the plaintiff he was acting on behalf of the West Lumber Company. The contention of the defendant is that it had sold the right to cut the timber to C. R. Johnson Lumber Company at $5 per thousand, and that the contract of plaintiff to cut it was made with Johnson either individually or acting in behalf of the C. R. Johnson Lumber Company. This issue was fairly submitted to the jury upon the conflicting evidence by his Honor, who told the jury in substance that if in making the contract C. R. Johnson was *bona fide* acting in behalf of himself, or the C. R. Johnson Lumber Company, then the issue should be found against the plaintiff. But if, notwithstanding the evidence relied on by the defendant to that effect, the jury found that in fact the device of separate corporations was used in order to evade responsibility on the part of the West Lumber Company, Johnson being president and practically owner of all the stock in both companies, then the issue should be found in favor of the plaintiff. In *Watson v. Manufacturing Co.,* 147 N. C., 469, in which W. W. Mills was president, secretary, and practically owner of all the stock in the company, the Court said: "It is competent to show by evidence *aliunde,* and we think it fully proven, that the loan was in truth made to the company and not to Mills, although in form to the latter. 7 Thompson on Corp., sec. 8402; *Jones v. Williams,* 37 L. R. A., 682. Thompson, at the end of paragraph 8402, says: 'A contract made by the holder of a majority or most of the shares of a corporation, without disclosing that the person signing the contract acted as agent for the corporation, may nevertheless be shown by evidence, *aliunde,* to have been intended as a corporate contract, and should be specifically enforced in equity as against such corporations.' Again, 'Although the form

of the transaction may be such as to indicate that it is the individual debt of the president of a corporation, yet if in point of fact the money was advanced for the use of the corporation, to be repaid out of its funds, it will be bound to make it good,' " citing section 8412.

In the same opinion the Court says: "He combined in himself the four attributes of president, treasurer, general manager, majority stockholder, and actually sole stockholder. The powers of such a person are set out in Thompson, 8556, who says: 'A stranger dealing with the corporation is not affected by secret restrictions upon his powers of which he has no notice.' "

In *Peanut Co. v. R. R.,* 155 N. C., 148, plaintiff corporation was permitted to recover, though the bill of lading was issued in the individual name of its president, the shipment being in truth actually for the corporation.

The late Judge Womack discussed the question in his work on Corporations, page 236, sec. 469, and upholds the doctrine here contended for, citing *Osborne v. Manufacturing Co.,* 50 N. C., 177; *Rumbough v. Imp. Co.,* 106 N. C., 461, and *Froelich v. Trading Co.,* 120 N. C., 40.

The principle deducible from the *Rumbough case, supra,* is that where one deals with property which he holds as agent or in trust, and signs individually, but is acting as agent in reference to the property, then the principal is bound. We think where the president deals directly in reference to his corporation's property, since he has no lawful right to deal with it individually, there should be a presumption that he acted lawfully, and in behalf of the corporation.

The evidence is voluminous and the exceptions are numerous. But practically that is the gist of the controversy, and it involved the determination of issues of fact by the jury. The charge of his Honor fairly submitted the evidence for their consideration. The jury have found that the contract, notwithstanding the methods and devices used, was made by the West Lumber Company, and that the plaintiff is entitled to recover on account of the work completed under said contract.

It can serve no purpose to minutely consider the exceptions and details of the controversy, which has been determined by the finding of the facts by the jury.

Upon consideration of all the exceptions and giving due weight to the able briefs filed by counsel on both sides, we are of opinion that there is

No error.