RICHARD H. GLENN, EARL C. HOOD, HELEN HOOD, CYNTHIA HOOD, TEAKA HOOD, SAMMY HOOD, MARILYN HOOD, ROBERT HOOD, ERICA HOOD, CHAUNCEY HOOD BY HIS G/A/L, AND LEKEITHIA HOOD BY HER G/A/L v. SMILIE WAGNER, D/B/A SALEM MANOR MOTEL, B-BOM, INC., AND D & S ENTERPRISES, INC.

No. 219PA84

(Filed 7 May 1985)

**1. Corporations § 1.1— disregarding corporate entity**

Courts will disregard the corporate form or "pierce the corporate veil" and extend liability for corporate obligations beyond the confines of a corporation's separate entity whenever necessary to prevent fraud or to achieve equity.

**2. Corporations § 1.1— disregarding corporate entity—liability for torts**

A corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.

**3. Corporations § 1.1— piercing corporate veil—domination not limited to transaction attacked**

Where an affiliated corporation is without a separate and distinct corporate entity and is operated as a mere shell, created to perform a function for an affiliated corporation or its common shareholders, domination sufficient to pierce the corporate veil need not be limited to the particular transaction attacked.

**4. Corporations § 1.1— disregarding corporate entity—erroneous instruction—harmless error**

In an action which related to disregarding the corporate entity of affiliated corporations rather than piercing the veil to reach a sole or dominant shareholder, the trial court's instruction referring to control and domination of business practice by an individual shareholder "as to the transactions in question" was mere surplusage. In any case, the instruction, if error, was harmless since despite it the jury found the evidence of control by defendant corporation over the affiliated corporation sufficient to return a verdict for plaintiffs against defendant corporation.

**5. Corporations § 1.1— disregarding corporate entity—control and domination—instruction on factors to be considered**

In an action relating to disregarding the corporate entity, the Court of Appeals erred in concluding that each of the four factors of inadequate capitalization, non-compliance with corporate formalities, complete domination and control, and excessive fragmentation should be treated as separate legal theories upon which a trial court must instruct where there is evidence of these factors. Rather, these and other factors, including non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the

dominant shareholder, non-functioning of other officers or directors, and absence of corporate records, are merely factors to be considered to determine whether sufficient control and domination is present to satisfy the first prong of the three-pronged rule known as the instrumentality rule.

**6. Corporations § 1.1— disregarding corporate entity—instrumentality rule—affiliated corporations or dominant shareholder**

The rule with regard to piercing the corporate veil encompasses both situations where there is direct stock ownership of a subsidiary corporation by a parent corporation and where stock control is exercised through a mutual shareholder.

Justice VAUGHN did not participate in the consideration or decision of this case.

PLAINTIFFS appeal from the decision of the Court of Appeals, reported at 67 N.C. App. 563, 313 S.E. 2d 832 (1984), granting defendants a new trial. Judgment for plaintiffs was entered by *Tash, J.* at the 24 August 1981 Civil Session of District Court, FORSYTH County. We allowed plaintiffs' petition for discretionary review on 2 October 1984.

*Legal Aid Society of Northwest North Carolina, Inc. by Ellen W. Gerber and Gwyneth B. Davis for plaintiff-appellants.*

*B. Wagner-Sumner for defendant-appellant B-Bom, Inc.*

BRANCH, Chief Justice.

The sole issue before us is whether the Court of Appeals erred in holding that the trial judge failed to properly instruct the jury with respect to piercing the corporate veil so as to make defendant B-Bom, Incorporated liable for torts committed by defendant D & S Enterprises. For the reasons set forth we reverse the Court of Appeals.

A full statement of the facts is set forth in the opinion of the Court of Appeals, 67 N.C. App. 563, 313 S.E. 2d 832. For purposes of our decision, the following summary of the facts will suffice. Plaintiffs instituted this action following their alleged wrongful eviction from Salem Manor Motel in Winston-Salem. The evidence at trial tended to show that at the time of their eviction in the fall of 1979, the Salem Manor Motel was owned by B-Bom, Inc. David Wagner and George Hill each own 50 percent of B-Bom's stock, with David Wagner as its president and registered agent.

B-Bom is in the business of acquiring, leasing, and managing property. B-Bom leased the Salem Manor to D & S Enterprises which operated the motel through its agent, defendant Smilie Wagner. David Wagner testified that D & S was "set up mainly to benefit [his cousin] Smilie as well as to help him [Smilie] make some additional funds." the Articles of Incorporation show that David Wagner was the sole subscribing shareholder in D & S. Under the terms of the lease, the bulk of the Salem Manor rents and profits were paid to B-Bom in the form of rental obligations. Smilie Wagner managed the business on a day-to-day basis. According to David Wagner, his own involvement in the business was "more of an advisory nature because that business was operated exclusively by Smilie . . . as a general rule he operated the business pretty much as he saw fit." He stated that he was unaware of the eviction policy which gave rise to this cause of action until he was notified that plaintiffs were evicted.

David Wagner testified that as of 1980, he and Smilie each owned 50 percent of D & S. David Wagner "thought" that he was the president and treasurer of D & S and that Smilie "must be" the vice-president and secretary. He could not recall whether there had been an organizational meeting, when the by-laws were adopted, who was on the initial Board of Directors, or how many board meetings had been held. Although he and Smilie met regularly to deal with business matters, he could not recall having a formal shareholder or annual meeting. The only formal instrument executed on behalf of D & S, which constituted its only business, was the lease agreement with B-Bom giving rise to the operation of the rental business and store at Salem Manor. That lease agreement was executed prior to the incorporation of D & S. B-Bom established the amount of rent to be charged for each of the Salem Manor units. David Wagner's law office served as the corporate office of both B-Bom and D & S.

In July of 1980, Smilie Wagner went into business for himself. B-Bom collected the rent from Salem Manor until October 1980 when an employee of another of David Wagner's corporations, located in the Salem Manor premises, was authorized to collect rent from the tenants. As a corporation, D & S was never formally dissolved. D & S is without assets to satisfy the judgment in this case. It was plaintiffs' theory at trial that Smilie Wagner should be considered the agent of B-Bom because his employer

D & S, was the "alter-ego" of B-Bom through which B-Bom operated the Salem Manor Motel and injured the plaintiffs.[1]

In this regard, the trial judge instructed as follows:

> *Did B-Bom, Incorporated, so dominate and control D & S Enterprises, Incorporated that the corporate entity should be disregarded?* The burden of proof on this issue is on the plaintiffs. This means that they must satisfy you by the greater weight of the evidence that D & S Enterprises had no separate role of its own. Under North Carolina law, a corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances the separate identities of parent and subsidiary or affiliated corporations may be disregarded. The corporate entity also may be disregarded if it is totally dominated by an individual shareholder.
>
> When a corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for its activities in violation of the declared public policy or statute of the state, the corporate entity will be disregarded and the corporation and the shareholders treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation. The control must be such complete domination of policy and business practice that as to the transactions in question the subservient corporation had no separate mind, will or existence of its own. Therefore, the plaintiffs must prove by the greater weight of the evidence that B-Bom, Incorporated, through its dominant shareholder, David Wagner, exercised such control over D & S Enterprises, Incorporated that D & S, in effect, had no separate identity, no separate mind or will of its own, but instead there was a complete identity of interest between the two corporations.

---

1. In their complaint plaintiffs alleged that under the authorization of Smilie Wagner their apartments were padlocked, personal property removed and damaged, and their mail returned to the post office. The jury awarded plaintiff Glenn judgment in the amount of $950 in compensatory and punitive damages and plaintiffs Hood $9,007 in compensatory and punitive damages.

With regard to this tenth issue—eleventh issue, rather, the plaintiffs allege and have introduced evidence tending to show that D & S Enterprises is the alter ego of B-Bom, Incorporated, and is controlled by B-Bom. On this eleventh issue, the defendants allege and have introduced evidence tending to show that D & S Enterprises and B-Bom, Incorporated, are entirely separate corporations and that no control is exercised by B-Bom over D & S. So I instruct you on this issue that if you find by the greater weight of the evidence that D & S Enterprises was the mere instrumentality or alter ego of B-Bom, Incorporated, with no separate will or mind of its own, it would be your duty to answer this issue "yes" in favor of the plaintiffs. On the other hand, if, considering all of the evidence, the plaintiffs have failed to prove this, it would be your duty to answer this issue "no" in favor of the defendants.

The question is whether the trial judge correctly applied the applicable law to the facts of the case. We answer in the affirmative.

[1, 2] It is well recognized that courts will disregard the corporate form or "pierce the corporate veil," and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity. 18 Am. Jur. 2d, *Corporations* § 15 (1965). In North Carolina, what has been commonly referred to as the "instrumentality rule," forms the basis for disregarding the corporate entity or "piercing the corporate veil." The decisions of this Court have stated the rule as follows: " '[A] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded.' " *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E. 2d 570, 575 (1966). *See Henderson v. Security Mortgage & Finance Co.*, 273 N.C. 253, 160 S.E. 2d 39 (1968); *Huski-Bilt, Inc. v. First Citizens Bank & Trust Co.*, 271 N.C. 662, 157 S.E. 2d 352 (1967).

This Court has enumerated three elements which support an attack on separate corporate entity under the instrumentality rule:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*B-W Acceptance Corp. v. Spencer,* 268 N.C. at 9, 149 S.E. 2d at 576.

Factors which heretofore have been expressly or impliedly considered in piercing the corporate veil include:

1. Inadequate capitalization ("thin incorporation"). *See Commonwealth Mut. Fire Ins. Co. v. Edwards & Broughton,* 124 N.C. 116, 32 S.E. 404 (1899) (recognizing "congenital insolvency" as "intrinsically dangerous").

2. Non-compliance with corporate formalities. *See Hammond v. Williams,* 215 N.C. 657, 3 S.E. 2d 437 (1939); *Henderson v. Security Mortgage & Finance Co.,* 273 N.C. 253, 160 S.E. 2d 39 (1968).

3. Complete domination and control of the corporation so that it has no independent identity. *See B-W Acceptance Corp. v. Spencer,* 268 N.C. 1, 149 S.E. 2d 570 (1966); *Waff Bros., Inc. v. Bank of North Carolina, N.A.,* 289 N.C. 198, 221 S.E. 2d 273 (1976).

4. Excessive fragmentation of a single enterprise into separate corporations. *See Fountain v. West Lumber Co.,* 161 N.C. 35, 76 S.E. 533 (1912).

*See generally* Robinson, North Carolina Corporation Law, §§ 2-12, 9-7 to -10 (3d ed. 1983).

The Court of Appeals, in its opinion, correctly recognized that the relationship between B-Bom and D & S was that of affiliated corporations, that is, corporations in which the controlling

interest in both is owned by the same person or persons. In this regard, the facts in the present case differ from those in *Acceptance Corp.*, *Huski-Bilt*, and *Henderson*. In both *Acceptance* and *Huski-Bilt*, the issue before the Court was whether a parent corporation should be held liable on the obligations of its subsidiaries. In *Henderson* the issue was whether the corporate entity should be disregarded and an individual dominant shareholder held liable on the theory that the corporation was the mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his unlawful activities. In these cases the factor of "complete domination and control," gave rise to three elements: (1) stock control and domination of finances, policy and business practice with respect to the transaction attacked; (2) control used by the defendant to commit the wrong; and (3) proximate cause.

[3] The rule of law as formulated in *Acceptance Corp.*, *Huski-Bilt* and *Henderson* was particularly suited to the facts of those cases. We hold in this case, however, that domination sufficient to pierce the corporate veil need not be limited to the particular transaction attacked. In applying this standard it should be remembered that it will be a rare case in which the corporate veil will be pierced when the domination does not extend to the transaction attacked. It is sufficient where, as here, one affiliated corporation is dominated by another to the extent that the dominated corporation has no separate mind, will or *identity* of its own. In this case there was plenary evidence that from its inception D & S had no separate identity and was never anything other than a tool of B-Bom.

In finding the disregard of corporate entity permissible in this case, we note that the evidence showed that the primary function of D & S was to collect rent for B-Bom and that it was the manner in which D & S, through its agent Smilie Wagner, went about that function that gave rise to the wrong alleged. David Wagner, the president and one of two directors for both B-Bom and D & S, frequently discussed business affairs with Smilie. Indeed, his control over D & S, of which he was the sole subscribing shareholder, was sufficient to allow him unilaterally to dissolve the lease agreement between B-Bom and D & S. In David Wagner's words, "that's like me informing me" that the lease, the only significant asset of D & S, was dissolved. D & S

was formed without adherence to corporate formalities, and without adequate capitalization. With respect to plaintiffs, who are involuntary creditors, D & S is insolvent.

Where an affiliated corporation is without a separate and distinct corporate identity and is operated as a mere shell, created to perform a function for an affiliated corporation or its common shareholders, we do not believe an analysis of domination need be narrowly limited to control over the *particular* transaction attacked—here the padlocking of the rooms at Salem Manor Motel. David Wagner exercised such control over the existence and functioning of D & S that if, as he contended, he was not aware of the actual transaction attacked, under the instrumentality rule we hold that he, and through him B-Bom, is deemed to have had notice of the transaction.

[4] The trial court's instructions in the present case restate, in substance, the law respecting the instrumentality rule as enunciated in *Acceptance Corp.*, *Huski-Bilt*, and *Henderson.* We note, however, that the second paragraph of the instruction refers to control and domination of business practice by an individual shareholder "as to the transactions in question." Although the evidence does not support a finding that B-Bom formulated or had actual knowledge of the policy underlying the transaction attacked, it is clear that the second paragraph of the instruction restated in part the law with regard to piercing the corporate veil where a corporation is an alter ego of a sole or dominant shareholder. This instruction was surplusage since this action relates to disregarding the corporate entity of affiliated corporations rather than piercing the veil to reach a sole or dominant shareholder. In any case, the instruction, if error, is harmless error since despite it the jury found the evidence of control by B-Bom sufficient to return a verdict for plaintiffs. Indeed, the evidence here is fully sufficient to support a finding that D & S Enterprises had "no separate role of its own" and that B-Bom, its affiliate, exercised "actual control" over D & S, "operating the latter as a mere instrumentality or tool."

In short, although the instrumentality rule has, until now, been tailored to deal with "domination and control" as evidenced in a parent-subsidiary or sole dominant shareholder situation, the

rule is not limited to factual situations or resulting legal analysis afforded by those cases.

[5]   Thus, we expressly reject the Court of Appeals' conclusion that the evidence at trial was insufficient to support an instruction on the instrumentality rule. Nor do we agree with that court's conclusion that each of the four factors enumerated above (inadequate capitalization, non-compliance with corporate formalities, complete domination and control, excessive fragmentation) should be treated as separate legal theories upon which a trial court must instruct where there is evidence of these factors. In fact, in addition to these four factors, which are most commonly encountered when the issue of intercorporate liability is addressed, courts have recognized numerous other factors which may be considered inherent in the instrumentality rule. These include: non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, nonfunctioning of other officers or directors, absence of corporate records. *See DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F. 2d 681 (4th Cir. 1976). We emphasize, these are merely factors to be considered to determine whether sufficient control and domination is present to satisfy the first prong of the three-pronged rule known as the instrumentality rule. *See B-W Acceptance Corp.,* 268 N.C. 1, 149 S.E. 2d 570.

It should be remembered that the theory of liability under the instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's relationship to that operation. It is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had "no separate mind, will or existence of its own" and was therefore the "mere instrumentality or tool" of the dominant corporation. As stated in *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F. 2d 681, 684 (4th Cir. 1976):

> The circumstances which have been considered significant by the courts in actions to disregard the corporate fiction have been "rarely articulated with any clarity." *Swanson*

*v. Levy* (9th Cir. 1975), 509 F. 2d 859, 861-2. Perhaps this is true because the circumstances "necessarily vary according to the circumstances of each case," and every case where the issue is raised is to be regarded as "sui generis [to] * * * be decided in accordance with its own underlying facts."

As we have stated herein, the two corporations in this case functioned as a single business enterprise in substance, if not in form. We agree with the Court of Appeals' conclusion that "[u]nder the evidence presented in this case, it would be unconscionable to allow the owner of a valuable apartment/room rental property to escape liability because it turned the property over to an inadequately capitalized operating company 'which is simply itself in another form.'" 67 N.C. App. at 590, 313 S.E. 2d at 849.

[6] Without dwelling at length on the rationale adopted by the Court of Appeals in support of its decision to grant defendants a new trial, we simply note that our rule with regard to piercing the corporate veil is broad enough to encompass both those situations where there is direct stock ownership of a subsidiary corporation by a parent corporation, and stock control as exercised through a mutual shareholder as evidenced in the present case. Thus, when there is evidence of common ownership and actual working control, as in the case of affiliated corporations, taken together with other factors suggesting domination of finances, policy or business practice (including, but not limited to undercapitalization, disregard of corporate formalities, and insolvency) an instruction as provided in the present case is adequate. Each case will be treated as *sui generis* with the burden on the plaintiff to establish the existence of factors that would justify disregarding the corporate entity.

We agree with the suggestion that "courts should abjure 'the mere incantation of the term instrumentality'" in applying the so-called "instrumentality" or "alter ego" doctrine. *DeWitt Truck Brokers*, 540 F. 2d at 685. Since the issue is one of fact, the trial court should take pains to spell out in its instructions the specific factors to be considered in determining whether the corporate entity should be disregarded.

Reversed.

Justice VAUGHN did not participate in the consideration or decision of this case.