**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KENNETH W. MCLESKEY,
<u>Plaintiff-Appellant,</u>

v.

DAVIS BOAT WORKS, INCORPORATED,
a/k/a Buddy Davis & Associates,
Incorporated; BUDDY DAVIS &
ASSOCIATES, INCORPORATED; CARSON
R. DAVIS, JR., a/k/a Buddy Davis;
BUDDY DAVIS ASSOCIATES YACHT
BROKERAGE, INCORPORATED; BARBARA            No. 99-1113
S. DAVIS; MILL LANDING MARINE
MAINTENANCE CENTER,
INCORPORATED; THICKET LUMP
ENTERPRISES, INCORPORATED,
<u>Defendants-Appellees,</u>

and

C. R. DAVIS COMPANY; CAROLINA
YACHT INTERIORS, INCORPORATED,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CA-98-16-2-BO)

Argued: April 4, 2000

Decided: July 21, 2000

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Walter DeKalb Kelley, Jr., WILLCOX & SAVAGE,
P.C., Norfolk, Virginia, for Appellant. Ashley Lee Hogewood, III,
KENNEDY, COVINGTON, LOBDELL & HICKMAN, L.L.P.,
Raleigh, North Carolina, for Appellees. **ON BRIEF:** Sara Wyche
Higgins, KENNEDY, COVINGTON, LOBDELL & HICKMAN,
L.L.P., Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kenneth McLeskey brought this action for unpaid wages against
Carson R. (Buddy) Davis, Barbara Davis, Buddy Davis Yacht Broker-
age, Inc. (Yacht Brokerage), and various other corporations wholly
owned by the Davises. The complaint alleged fraud, unfair trade prac-
tices, breach of contract, and violation of the North Carolina Wage
and Hour Act. In addition to the substantive counts, the complaint
sought to impose personal liability on the Davises as officers and
directors of a dissolved corporation, to pierce the corporate veil of
Yacht Brokerage, and to "reverse pierce"[1] the veils of the other Davis-
owned corporations or entities. The district court awarded summary

_____

[1] Typically, piercing of the corporate veil renders a shareholder liable
for the obligations of the corporation. "Reverse piercing" applies when
the "assets of the corporate entity are used to satisfy the debts of a corpo-
rate insider so that the corporate entity and the individual will be consid-
ered one and the same." In re Blatstein, 192 F.3d 88, 100 (3d Cir. 1999)
(internal quotations omitted).

2

judgment to the defendants on all claims except McLeskey's breach of contract claim against Yacht Brokerage. That claim went to trial and McLeskey prevailed. McLeskey now appeals the district court's grant of summary judgment to the Davises and the other corporate defendants on three of his other claims -- the claims (1) to impose personal liability on the Davises as officers and directors of a dissolved corporation, (2) to pierce the several corporate veils, and (3) to recover under the Wage and Hour Act. For the reasons stated below, we vacate the judgment as to these three claims and remand for further proceedings.

I.

Defendants Buddy and Barbara Davis are the sole shareholders of the seven defendant corporations, each of which is engaged in some aspect of yacht construction, sales, and repair. All of these corporations operated out of a single facility using the trade name "Buddy Davis & Associates." In August 1993 plaintiff Kenneth McLeskey began working as a yacht salesman for Yacht Brokerage. Yacht Brokerage was the exclusive broker for the Davises' yacht construction business (Davis Boat Works, Inc.), and Yacht Brokerage received a five percent commission on all new boat construction contracts.

Buddy Davis and McLeskey began discussing a new employment contract in late 1993, and on January 1, 1994, McLeskey became president of Yacht Brokerage. The new agreement entitled him to a 2.5 percent commission on all new boat contracts that he personally generated plus a fifty percent share of any profits realized by Yacht Brokerage. The Davises, who were both officers and directors of Yacht Brokerage, told McLeskey that they had incorporated the company in the 1980s, that it had been "inactive" since 1987, and that the Davises were in the process of filing for active status. McLeskey alleges, however, that the Davises failed to tell him that Yacht Brokerage had been administratively dissolved and placed under revenue suspension in December 1993.

McLeskey was fired by Yacht Brokerage in December 1994, at which time he claims he was owed $72,250 in commissions. Yacht Brokerage conceded that he was owed $8,904.83 and offered to pay that amount, subject to McLeskey agreeing to release all of his

3

remaining claims. McLeskey refused to settle and instead filed suit against the Davises, Yacht Brokerage, Davis Boat Works, and the various other corporate entities owned by the Davises. McLeskey's complaint alleged breach of contract, fraud, violation of the North Carolina Wage and Hour Act, and unfair trade practices. McLeskey also sought (1) to impose individual officer and director liability upon the Davises for acting through a dissolved corporation (Yacht Brokerage) and (2) to pierce the corporate veils of the several Davis corporations named as defendants. The defendants were awarded summary judgment on all claims except McLeskey's claim for breach of contract against Yacht Brokerage. That claim went to trial and the jury awarded McLeskey the full $72,250 that he claimed he was due. Because Yacht Brokerage had insufficient funds to satisfy the judgment, McLeskey appealed the district court's grant of summary judgment for the Davises on the claim for personal liability as officers and directors of a dissolved corporation, for all defendants on the veil piercing claim, and for Yacht Brokerage on the claim for violation of the North Carolina Wage and Hour Act.

II.

McLeskey claims that the Davises are personally liable, as officers and directors of a dissolved corporation, for the contractual obligations of Yacht Brokerage. The district court concluded that McLeskey was estopped from challenging Yacht Brokerage's corporate status because McLeskey had "repeatedly acknowledged the corporate status" of Yacht Brokerage during the period of his employment. On that basis, the district court granted summary judgment to the Davises. We hold that directors and officers of a suspended or dissolved corporation, who undertake obligations on behalf of that corporation, cannot assert corporation by estoppel to avoid personal liability. We therefore vacate the summary judgment for the Davises.

Under North Carolina law, "directors and officers are personally liable for corporate obligations incurred by them on behalf of the corporation, or by others with their acquiescence, if at that time they were aware that the corporate charter was suspended." Charles A. Torrence Co. v. Clary, 464 S.E.2d 211, 213 (N.C. Ct. App. 1995). See also Pierce Concrete, Inc. v. Cannon Realty & Constr. Co., 335 S.E.2d 30, 31 (N.C. Ct. App. 1985). There is no dispute that Yacht

Brokerage had been suspended and dissolved, that the Davises were aware of the suspension and dissolution, and that the Davises were officers and directors of the dissolved corporation. The Davises argue, however, that McLeskey dealt with Yacht Brokerage as if it was a corporation. As a result, the Davises contend, the doctrine of "corporation by estoppel" precludes McLeskey from denying Yacht Brokerage's corporate status in order to impose personal liability on its officers and directors.

We disagree. Corporation by estoppel applies when a party contracts with an entity that appears to be a corporation, breaches the contract, and then, when sued for breach, tries to avoid liability by challenging the corporation's status and capacity to contract. See Erskine Motors Co. v. Chevrolet Motor Co., 105 S.E. 420, 422 (N.C. 1920); Otis Elevator Co. v. Cape Fear Hotel Co. , 90 S.E. 253 (N.C. 1916); Bond Truck Service, Inc. v. Hill, 281 S.E.2d 61, 66 (N.C. Ct. App. 1981); Wickes Corp. v. Hodge, 172 S.E.2d 890, 892 (N.C. Ct. App. 1970). In such cases, a defendant who has dealt with an entity as a corporation is estopped from later denying its existence. See Otis Elevator Co., 90 S.E. at 253-54. The doctrine does not apply, however, when a person contracts with a suspended corporation, sues for breach, and the defendant officers and directors seek to avoid personal liability by arguing that the plaintiff dealt with the suspended entity as if it was a legitimate corporation. See Erskine Motors, 150 S.E. at 422 ("Neither a person nor an organization can escape liability when it has contracted as a corporation . . . ."). It is enough to point out that if we adopted the Davises' argument, we would gut the principle that directors and officers are liable for obligations they incur on behalf of a suspended corporation. Under the Davises' theory, so long as contracting parties were unaware of the suspension, directors and officers could avoid personal liability simply by misrepresenting or concealing the status of the corporation. But "[t]he law will not permit a corporate officer to create obligations in the name of the corporation, knowing the acts are without authority and invalid, and then be permitted to use the corporate name as a shield against the creditors." Pierce Concrete, 335 S.E.2d at 32.

We therefore hold that a plaintiff who has dealt with a suspended corporation as if it was valid is not estopped from imposing personal

5

liability on officers or directors of the suspended corporation who have undertaken obligations on its behalf.[2]

III.

We next address McLeskey's claim that the district court erred in granting summary judgment on his claim that Yacht Brokerage's corporate veil should be pierced and that the veils of the other Davis corporations should be reverse-pierced. McLeskey alleges that the Davises used the assets of Yacht Brokerage to pay the debts of other entities that they owned, artificially deflating the profits of Yacht Brokerage in order to make it appear as though the company made no money in 1994 and thus owed him no bonus. We conclude that the evidence in support of piercing the corporate veils was sufficient to withstand summary judgment, and we therefore vacate the district court's grant of summary judgment to the defendants on this claim.

North Carolina permits the veil to be pierced when a person or corporation "exercises actual control over another[corporation], operating the latter as a mere instrumentality or tool." Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985). To pierce the corporate veil, a plaintiff must show "(1) stock control and domination of finances, policy, and business practice with respect to the transaction attacked; (2) control used by the defendant to commit fraud or wrong; and (3) proximate cause." Id. at 331. Numerous factors may be relied upon to show control and domination. These include inadequate capitalization, non-compliance with corporate formalities, complete domination and control, excessive fragmentation of a single enterprise into separate corporations, siphoning of funds by a dominant shareholder, and absence of corporate records. See id. at 332.

_____

[2] The Davises further argue that since McLeskey was president of Yacht Brokerage and was aware that the corporation was on "inactive status," he too is liable for the obligations of the corporation. McLeskey, however, contests both of these assertions, arguing that he was president in name only, see Gold v. Sloan, 486 F.2d 340, 351 (4th Cir. 1973) (employee who was only a "titular" corporate officer and lacked the actual responsibilities of such an officer could not be held liable for corporate acts), and that he was unaware that Barbara Davis, as secretary, had failed to reactivate Yacht Brokerage's corporate charter. This is a factual dispute that cannot be resolved at the summary judgment stage.

McLeskey introduced evidence pertaining to most of these recognized factors. Construed in the light most favorable to McLeskey, see United States v. Leak, 123 F.3d 787, 794 (4th Cir. 1997), that evidence showed (1) that the Davises failed to observe corporate formalities in operating a dissolved corporation, (2) that the Davises were the sole shareholders in Yacht Brokerage and all other defendant corporations and had sole authority to write checks on behalf of Yacht Brokerage, (3) that the Davises operated several businesses out of a single facility and under a single trade name, (4) that Yacht Brokerage's corporate bank account was in the name of a different Davis-owned business and was used by several other Davis-owned businesses, (5) that the Davises used funds belonging to Yacht Brokerage and their other businesses for personal expenses, (6) that numerous payments from Yacht Brokerage to other Davis-owned entities were documented either by illegible invoices or not at all, and (7) that the Davises caused commissions owed to Yacht Brokerage to be diverted to Davis Boat Works. Based on this evidence and the permissible inferences that could be drawn from it, a reasonable juror could conclude that the Davises disregarded corporate formalities, dominated and controlled Yacht Brokerage, failed to maintain corporate records, and commingled, diverted, and siphoned corporate funds. Thus, we hold that McLeskey introduced sufficient evidence of the Davises' domination or control of Yacht Brokerage to withstand a motion for summary judgment.

The district court further held that McLeskey had failed to "present grounds for disregarding the corporate form of the other corporate defendants." The direct evidence of domination and control was certainly stronger with respect to Yacht Brokerage than to the other Davis-owned businesses. Nonetheless, McLeskey produced evidence of control, irregular recordkeeping, disregard of corporate formalities, and commingling, diverting, and siphoning of funds with respect to all of the Davises' businesses. This evidence, and the inferences that could be drawn from it, were sufficient for a reasonable juror to find that the Davises' corporations "functioned as a single business enterprise in substance, if not in form." Glenn , 329 S.E.2d at 333.

Finally, the defendants argue that McLeskey failed to allege a sufficient nexus between the domination and control of Yacht Brokerage and any fraud perpetrated by the defendants. McLeskey has alleged

7

that the Davises caused Yacht Brokerage to pay expenses attributable to the corporate defendants while diverting Yacht Brokerage's revenues to those other businesses. The result, according to McLeskey, was that Yacht Brokerage's profits -- and his share of those profits -- were understated. North Carolina courts will allow the corporate veil to be pierced "whenever necessary to prevent fraud or to achieve equity." Id. at 330. McLeskey's allegation that the Davises frustrated his contract rights by redistributing the profits of Yacht Brokerage among the various corporate defendants provides a sufficient nexus between defendants' conduct and the alleged abuse of the corporate privilege.

For the reasons stated above, we vacate the district court's grant of summary judgment on all claims contingent on piercing the several corporate veils.

IV.

McLeskey also claims that Yacht Brokerage violated the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.7A, 95-25.22, when it conceded that it owed him $8,904.83, yet refused to pay unless he released the balance of his claim for $72,250. Since McLeskey only complained about the refusal to unconditionally pay the undisputed amount, the district court sua sponte held that the claim was mooted by Yacht Brokerage's offer to settle. The court then granted summary judgment to all defendants.

The Wage and Hour Act claim was not moot. North Carolina Gen. Stat. § 95-25.7A(a) states that "If the amount of wages is in dispute, the employer shall pay the wages, or that part of the wages, which the employer concedes to be due without condition , within the time set by this Article." N.C. Gen. Stat. § 95-25.7A(a) (emphasis added). An offer to pay undisputed wages, but only if the employee releases all other claims, clearly is not payment "without condition," and it thus fails to satisfy the requirements of the Act. It is of no consequence that such a release, required by the employer as a condition of partial payment, would be void. See id. § 95-25.7A(b). An illegal, in terrorem condition is still a condition. We therefore vacate the district

8

court's entry of summary judgment for Yacht Brokerage on McLeskey's claim under the Wage and Hour Act.[3]

V.

In sum, we vacate the district court's grant of summary judgment to the Davises on the claim for personal liability as officers and directors of a dissolved corporation, to all defendants on the veil piercing claim, and to Yacht Brokerage on the claim for violation of the North Carolina Wage and Hour Act. The case is remanded for further proceedings.

VACATED AND REMANDED
_____

[3] We also note that the Wage and Hour Act provides for "liquidated damages" in addition to the actual wages owed. See N.C. Gen. Stat. § 95-25.22(a1); Hamilton v. Memorex Telex Corp., 454 S.E.2d 278, 285-86 (N.C. Ct. App. 1995). Thus, McLeskey's claim under the Wage and Hour Act is not mooted by the fact that he has already prevailed on his breach of contract claim.