ROY STEPHEN POSTELL v. B&D CONSTRUCTION CO. AND NON-INSURED CARRIER AND JAMES L. MOSLEY

No. 9010IC977

(Filed 7 January 1992)

1. **Master and Servant § 71 (NCI3d) — workers' compensation — average weekly wage — method of computation**

     Pursuant to the "catch-all" provision of N.C.G.S. § 97-2(5), the Industrial Commission properly computed the average weekly wage of plaintiff, a carpenter who worked sporadically, by taking his total earnings for the year in which the injury occurred, excluding plaintiff's dates of temporary total disability, dividing by the total days of available work, and multiplying by seven.

     **Am Jur 2d, Workmen's Compensation §§ 368, 369, 378.**

2. **Master and Servant § 48 (NCI3d) — workers' compensation — owner of house not co-general contractor**

     The Industrial Commission properly concluded that defendant owner was not a joint or co-general contractor on the work site when plaintiff sustained an injury compensable under the Workers' Compensation Act, since the evidence tended to show that defendant was not engaged in construction prior to the project in question and had no expertise in that

1

field; one of the principals in defendant construction company introduced defendant to the company's subcontractor; the subcontractor hired plaintiff and set the amount of his pay; plaintiff set his own hours, provided his own tools, and was guided in his work by the blueprints and occasionally some instruction from the subcontractor; and plaintiff testified that he assumed that the principal had the authority to discharge him.

Am Jur 2d, Workmen's Compensation §§ 128, 129.

3. **Master and Servant § 50 (NCI3d)— workers' compensation— plaintiff as employee or independent contractor**

In an action to recover under the Workers' Compensation Act the Industrial Commission properly found that defendant owner was not an employer of plaintiff where the evidence tended to show that for two years prior to the accident in question plaintiff had earned a living as an independent carpenter; the hours worked by plaintiff were not set by defendant owner but by the general contractor on the job site; plaintiff testified that he brought and used his own tools to the job site; and plaintiff testified that he intended to leave the work site in question when the framework was done to work with his father on another project.

Am Jur 2d, Workmen's Compensation §§ 168-170.

4. **Master and Servant § 48 (NCI3d); Corporations § 115 (NCI4th)— failure of corporation president to obtain workers' compensation insurance—corporate veil pierced—president personally liable**

The Industrial Commission did not err in determining that defendant Rhyne was personally liable for defendant corporation's failure to obtain workers' compensation insurance, since the Commission pierced the corporate veil upon finding that defendant or his wife knew or should have known of the requirements of the Workers' Compensation Act; defendant Rhyne as president of defendant corporation also used the corporate structure to avoid personal liability for his failure to procure workers' compensation coverage for employees of his corporation; the personal monies of defendant were commingled with the assets of the corporation; there was no payment of dividends; the corporation was insolvent due to its liability to plaintiff; the dominant shareholders siphoned funds;

other officers or directors were nonfunctioning; and the corporation was undercapitalized in light of the scope of its operations and compensation paid to its employee/shareholders.

**Am Jur 2d, Corporations §§ 43-46, 51.**

APPEAL by plaintiff, Roy Stephen Postell, and defendant, B&D Construction Co., from Opinion and Award of the North Carolina Industrial Commission entered 4 May 1990.

. *Lore & McClearen, by R. Edwin McClearen and F. Scott Templeton, for plaintiff-appellant and plaintiff-appellee, Roy Stephen Postell.*

*Shelley Blum for defendant-appellant, B&D Construction Company.*

*Casey & Bishop, by Jeffrey L. Bishop, for defendant-appellee, James L. Mosley.*

WYNN, Judge.

## Facts

Plaintiff, Roy Stephen Postell ("Postell") was injured on May 19, 1988, when a sixteen penny nail penetrated his eye as he worked on the framing of a house. At the time of the accident, Postell worked for B&D Construction Corporation ("B&D"), a company owned by Bob and Doris Rhyne. Bob Rhyne ("Rhyne") on behalf of B&D, had contracted with James Mosley ("Mosley") to build the Mosley house on the work site.

Postell filed a claim against B&D on July 1, 1988, and against Mosley for the same injuries on August 17, 1988. Neither defendant had acquired workers' compensation insurance. In May of 1989, Deputy Commissioner Edward Garner, Jr., after conducting a hearing on this matter, held Bob Rhyne "personally and jointly and severally liable to the plaintiff along with B&D Corporation and Mr. James Mosley" for the injuries sustained by Postell. (The Deputy Commissioner made certain findings and conclusions with respect to Doris Rhyne but did not conclude that she was liable to the plaintiff.) The Deputy Commissioner further computed the plaintiff's rate of compensation at $135.94 per week based upon a determination that his average weekly wage was $203.91. From this award, all parties appealed to the Full Industrial Commission ("Com-

mission"): the defendants, on the determination of liability; and the plaintiff, on the limited issue of average weekly wage computation.

On appeal, the Commission released Mosley from liability, but upheld the finding of liability on the part of Rhyne, individually, and B&D. The Commission also upheld the computation of Postell's average weekly wage. From the ruling of the Commission, the parties appealed to this Court.

## I.

### Postell's Appeal

### A. Computation of the Average Weekly Wage

The role of this Court in reviewing an appeal from the Industrial Commission is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings. *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980).

[1] Postell first assigns error to the Commission's adoption of the Deputy Commissioner's computation of his average weekly wage. He contends that the Commission erred in determining his average weekly wage in that it was calculated using an incorrect method thus resulting in a lower wage than he earned actually.

The North Carolina Supreme Court in *Dereberry v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986), set forth certain considerations that must be taken into account when determining average weekly wage. The Court held that average weekly wage should be based upon the measure of the injured employee's earning capacity. *Id.* The Court also noted that the average weekly wage must be determined by calculating "the amount which the injured employee would be earning were it not for the injury." *Id.* at 197, 347 S.E.2d at 817.

Moreover, in *Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966), the Supreme Court addressed the issue of wage computation for a seasonal employee. There, the Court held that the work in question did not provide work in each of the 52 weeks of the year; some weeks the job was non-existent. "Fairness to the employer requires that we take into consideration both peak and slack periods." *Id.* at 522, 146 S.E.2d at 450.

## POSTELL v. B&D CONSTRUCTION CO.

[105 N.C. App. 1 (1992)]

To determine Postell's compensation rate in this case, the Deputy Commissioner relied upon the statutory methods of calculating average weekly wage set out in N.C. Gen. Stat. § 97-2(5) (1985). Within this statute, there are four different methods to calculate average weekly wage:

[E]arnings of an injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . . divided by 52; but if the injured employee lost more than 7 consecutive calendar days at one or more times during such periods, the earnings for the remainder of such 52 weeks shall be divided by the number of weeks after the time so lost has been deducted.

Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided results fair and just to both parties will be thereby obtained.

Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing the average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

*Id.*

Relying upon these statutory considerations, the Deputy Commissioner made the following pertinent findings of fact and conclusions of law:

### Findings of Fact

The plaintiff earned a total of $1,409.50 during a four-week period for his hourly services. These payments were made

directly by defendant, James Mosley, on his personal checking account on April 29, 1988 for 50 hours at $8.00 per hour; on May 6, 1988 for 50 hours at $9.00 per hour; on May 13, 1988 for 32 hours at $9.00 per hour and on May 20, 1988 for 33.5 hours at $9.00 per hour.

The plaintiff was not continuously employed or continuously engaged as an independent contractor during the 52-week period preceding his eye injury.

### Conclusions of Law

The employment period prior to the plaintiff's injury was a period of less than 52 weeks, and the fair and equitable manner of computing his earnings yields an average weekly wage of $203.91. G.S. § 97-2(5).

The plaintiff's compensation rate for all relevant periods under the North Carolina Workers' Compensation Act is $135.94. G.S. § 97-29.

The Commission fully adopted these findings and conclusions of law. On appeal, upon applying the statutory methods for calculating average weekly wage as well as the considerations of the above stated case law, we note initially that the first method of computation is not applicable to the computation of wages for Postell because he worked less than 52 weeks on the job site.

The second method was not used to calculate Postell's average weekly wage for two reasons: the job itself was temporary in nature and would end upon completion of the framing, and basing an average weekly wage on a four week time period would result in an inequity for his employer. The record indicates that Postell worked sporadically in the carpentry business; as such, calculations under this method would be mere speculation of what he would have earned had he not been injured.

Under the third statutory method, to calculate Postell's average weekly wage would require comparing Postell's work with an employee of the "same grade and character . . . in the same locality or community" as required by § 97-2(5). There is competent evidence to support the Deputy Commissioner's finding that this was impractical because Postell's employment did not afford the same type of work throughout the year. To find a similarly skilled carpenter doing framing work on a house similar to Mosley's, 52 weeks

before Postell's injury, would work an impracticability in calculating average weekly wage for purposes of the statute.

Finally, N.C. Gen. Stat. § 97-2(5) includes a "catch-all" provision, to be used when warranted by "exceptional circumstances." The Commission upheld the computation of Postell's average weekly wage under this provision stating that, "[t]he Deputy Commissioner's finding as to plaintiff's average weekly wage, based on plaintiff's actual earning record during 1986, 1987 and 1988, appears to best reflect plaintiff's actual earnings." The Commission also held this was a "fair and equitable manner" of computation. We agree with the Commission that these findings are supported by competent evidence.

The Commission further agreed with the Deputy Commissioner that the findings supported the conclusion of law that Postell's average weekly wage was $203.91. This figure encompassed plaintiff's earnings, which totalled $7545.00 for 1988, excluding Postell's dates of temporary total disability (May 19, 1988-September 3, 1988; 15 weeks). Dividing $7545.00 by 259 days of available work, the amount Postell earned daily was approximately $29.13. This amount multiplied by 7 days is equivalent to $203.91.

Furthermore, we agree that this computation, found by the Deputy Commissioner and adopted by the Commission, supports the conclusion of law that Postell's average weekly wage was indeed $203.91. Therefore, the plaintiff's assignment of error is overruled.

### B. Co-contractor Status

[2] Plaintiff next assigns error to the Commission's reversal of the Deputy Commissioner's determination that Mosley was a joint or co-general contractor on the work site within the meaning of the Workers' Compensation Act. Again, the role of this Court is to determine whether the findings of fact are supported by competent evidence and whether the conclusions of law are supported by the findings. *See generally, Barham*, 300 N.C. at 331, 266 S.E.2d at 678.

The Deputy Commissioner made the following pertinent findings of fact and conclusions of law:

### Findings of Fact

In 1986 both defendant Mosley and Rhyne worked in the same building for Celenese Corporation and they began to discuss

with one another the prospect of defendant Mosley building a house at some point.

The land at Balmoral Circle was purchased by defendant Mosley.

Defendant Mosley and Rhyne never entered into a written contract for the construction of the house.

Rhyne and defendant Mosley were in joint control of the residential project at Balmoral Circle.

Rhyne and defendant Mosley were co-contractors and co-employers in the Balmoral Circle project.

### Conclusions of Law

The defendant, James Mosley, was a co-general contractor and co-employer of the plaintiff, Steve Postell.

The last two findings of fact listed above were modified by the Commission to eliminate Mosley's name from the findings. The Commission deleted also the conclusion of law listed above.

The plaintiff contends that Mosley was not merely an owner of the house being built, which would indicate that he was exempt from liability, but that his conduct rose to a level sufficient to characterize him as a general contractor. The Commission disagreed and found that Mosley was not a co-general contractor. As such, the Commission concluded that Mosley was not bound by the provisions within the Act because, "[a]n owner cannot be a contractor within the meaning of § 97-19. The liable party is one who shall sublet a contract." Plaintiff asserts that this finding was "illogical and contrary to the philosophy of the North Carolina Workers' Compensation Act." We find this argument to be without merit.

N.C. Gen. Stat. § 97-19 (1985 & Supp. 1990) sets forth the controlling provision on this issue. It provides in pertinent part that:

Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by the Industrial Commission, stating that such subcontractor has complied with G.S. 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service less than four employees in the same business within this State, to the same extent as such subcontractor would be if he were

subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor, any principal or partner of such subcontractor or any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.

Further, in *Greene v. Spivey,* our Supreme Court held,

The manifest purpose of this statute, enacted as an amendment to the original Workmen's Compensation Act, is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on principal contractors, intermediate contractors, or subcontractors, who presumably being financially responsible, have it within their power, in choosing subcontractors, to pass upon their financial responsibility and insist upon appropriate compensation protection for their workers.

236 N.C. 435, 443, 73 S.E.2d 488, 494 (1952).

In the case at bar, there was evidence that Mosley was not previously engaged in construction work and had no expertise in that field. Rhyne introduced Mosley to B&D's subcontractor, McMickle; Mosley approved of McMickle and asked Rhyne to have him start right away.

Subsequently, McMickle hired Postell, set the amount of his pay and they began work. Postell set his own hours, provided his own tools and was guided in his work by the blueprints of the house and occasionally, some instruction from McMickle. Postell testified that he assumed that Rhyne had the authority to discharge him. These findings of fact were supported by competent evidence. Furthermore, the Commission's conclusion of law that Mosley was not a co-general contractor supports these findings. Accordingly, this assignment of error is overruled.

### C. Employment Relationship

[3] Plaintiff's final assignment of error is that the Commission erred by finding that Mosley was not an employer of Postell. We disagree. The Commission's findings of fact and conclusions of law set out in the preceding section are also pertinent to this issue.

In order for Postell to maintain an action against Mosley for workers' compensation, he must be "in fact and in law, an employee

POSTELL v. B&D CONSTRUCTION CO.

[105 N.C. App. 1 (1992)]

of the party from whom compensation is claimed." *Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988). Our Supreme Court has illuminated several factors that are indicative of an employee/employer relationship. They include whether the person employed:

> (a) is engaged in an independent business; (b) is to have independent use of his special skill, knowledge or training in the execution of the work; (c) is doing a specified piece of work at a fixed price . . . or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Doud v. K&G Janitorial Service*, 69 N.C. App. 205, 211-212, 316 S.E.2d 664, 669, *disc. review denied*, 312 N.C. 492, 322 S.E.2d 554 (1984) (quoting *Hayes v. Elon College*, 224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944)).

Moreover, in *Youngblood*, the Court concluded that, "[n]o particular one of these factors is decisive in itself. Each is but a sign which must be considered with all the other indicia and circumstances to determine the true status of the parties." *Id.* at 385, 364 S.E.2d at 438.

After a careful review of the record of this case, we uphold the Commission's finding that Mosley was not an employer of Postell, and in so finding we note that the evidence supported the following:

1. Postell, since 1986 has earned a living as an independent carpenter.

2. Postell testified that he had to use his skill and training in order to "get the product the way he [the customer] wants it."

3. The hours worked by Postell were not set by Mosley but the general contractor on the job site.

4. Postell testified that he brought and used his own tools to the job site.

5. Postell did not work full time for Mosley and testified that he intended to leave the site when the frame work was done to work with his father on another project.

POSTELL v. B&D CONSTRUCTION CO.

[105 N.C. App. 1 (1992)]

We conclude that competent evidence existed for the finding by the Commission that Mosley was not the employer of Postell. Accordingly, we overrule plaintiff's final assignment of error.

## II.

## Defendant's Appeal

[4]  The defendant, Rhyne, assigns error to the Commission's determination that he is personally liable for the omission of B&D to obtain workers' compensation insurance. In order to impose personal liability on Rhyne, owner of one-half of B&D, the Commission concluded that it was necessary to "pierce the corporate veil" of B&D.

In *Glenn v. Wagner*, 313 N.C. 450, 329 S.E.2d 326 (1985), the Supreme Court reiterated that North Carolina recognizes the "instrumentality rule" as the basis for disregarding the corporate entity or "piercing the corporate veil." That rule, in the context of this case, would hold that where one exercises actual control over a corporation operating the latter as a mere instrumentality or tool, then that controlling individual is liable for the torts of the corporation thus controlled. "In such instances, the separate identities . . . may be disregarded." *Id*. at 454, 329 S.E.2d at 330 (citations omitted).

To "pierce the corporate veil" the Commission utilized the three part test for determining whether a corporation was being used as an instrument set out in *Glenn* and later restated in *Harrelson v. Soles*, 94 N.C. App. 557, 380 S.E.2d 528 (1989). The Court in *Harrelson* stated that liability may be imposed on an individual controlling a corporation as an "instrumentality" when he had:

(1) Control, . . . complete domination, . . . of policy and business practice in respect to the transaction attacked so that the corporate entity . . . had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used . . . to perpetrate the violation of a statutory or other positive legal duty . . . in contravention of the plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id*. at 561, 380 S.E.2d at 531.

The Commission adopted the following findings of fact found by the Deputy Commissioner to support the conclusion that the three prong test set forth in *Glenn* and *Harrelson* has been met:

### Findings of Fact

Rhyne or Mrs. Rhyne, either personally or in their corporate capacity, either knew or should have known of the requirements of Chapter 97 of the North Carolina Workers' Compensation Act.

The personal monies of Bob Rhyne were co-mingled with the assets of B&D Corporation through loans at times and he would reimburse himself whenever the company would generate some level of profit.

[I]n the current pending workers' compensation case, it is apparent that Rhyne as president of B&D Corporation also used the corporate structure to avoid personal liability for his failure to procure the required North Carolina Workers' Compensation coverage for employees of his corporation.

Moreover, the Commission considered the following factors determinative in concluding that it was necessary to pierce the corporate veil: nonpayment of dividends; insolvency of the debtor corporation (due to its liability to plaintiff); siphoning of funds by the dominant shareholders; nonfunctioning of other officers or directors; and, inadequate capitalization in light of the scope of its operations and compensation paid to its employee/shareholders.

Based upon this evidence, the Commission adopted the first conclusion of law found by the Deputy Commissioner and added the second conclusion of law, both of which are set forth below:

### Conclusions of Law

B&D Corporation is a sham and grossly or "thinly incorporated." B&D Corporation has been saddled with disproportionate heavy debts for the personal gain of its sole shareholder, Bob Rhyne and it is not entitled to the immunity conferred by the corporate laws of this state.

That Robert F. (Bob) Rhyne, through his domination of defendant B&D Construction Company, Inc., caused said corporation to neglect and fail to perform its statutory duty to the plaintiff to obtain workers' compensation insurance covering the subject injury, and thereby caused plaintiff to unjustly suffer the

inability to swiftly recover compensation benefit due him under the Act; and therefore, said Robert F. (Bob) Rhyne is personally liable as the alter ego of said defendant corporation.

We find that there was competent evidence for the Commission's finding that Rhyne exercised complete control over B&D and that the corporation was a "sham." Moreover, the record further supports the conclusion that Rhyne had a statutory duty under the Workers' Compensation Act to procure insurance, he should have known of the statutory duty, and his failure to do so was the proximate cause of Postell's injuries.

The purpose of the Act is to provide workers with protection from those who have it within their power to "insist upon appropriate compensation." *See Greene*, 236 N.C. at 443, 73 S.E.2d at 494. Rhyne, not only did not insist on appropriate compensation, he provided no compensation at all and confessed ignorance of the law when asked about the requirements of the Act. We find that the Commission's findings of fact are supported by competent evidence and its conclusions of law are supported by the findings. For these reasons, the defendant's assignment of error is overruled.

For the foregoing reasons, we agree with the findings of the Full Industrial Commission computing the plaintiff's average weekly wage at $203.91 and with the finding that Mosley was neither a co-general contractor nor an employer. With regard to the defendant, we uphold the finding that Rhyne is liable personally and that such liability is joint and several with that of B&D. Therefore, the Commission's decision is,

Affirmed.

Judges ARNOLD and JOHNSON concur.