The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Form 21 agreement approved by the Industrial Commission on 25 April 1996, as:
 STIPULATIONS
1. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment to his back, head, and internal organs on 2 August 1995.
3. The parties agreed that disability resulting from the injury by accident on 2 August 1995 began on 3 August 1995, and that defendant-employer would compensate plaintiff as of that date and continuing pursuant to a Form 21 agreement approved by the Commission on 25 April 1996.
4. Plaintiff's average weekly wage on 2 August 1995 was $304.80. This wage yields a compensation rate of $203.20.
 ***********
Admitted into evidence were all documents admitted at the hearing before Deputy Commissioner Pfeiffer, as follows: Plaintiff's exhibits one through twelve, which consist of plaintiff's pay stubs, payroll records, a Form 22 wage chart, various business records of defendant-employer relating to its incorporation and assets, and the Form 19 filed by defendant-employer in this case. The following forms shall also be part of the record in this case: Forms 18, 21, 22, and 33.
The record further contains the following: The transcript of the evidence presented at the hearing before Deputy Commissioner Pheiffer (admitted at the hearing before the Full Commission as Plaintiff's Exhibit 1, with specific written objections from defendant noted); 484 pages of exhibits presented at the 10 January 2000 evidentiary hearing before the Full Commission; the following exhibits presented at the 23 May 2000 evidentiary hearing before the Full Commission: Plaintiff's exhibits 7, 8, and 9 and the Attorney General's exhibits 1, 2, and 3; medical records submitted by plaintiff and Farm Bureau records submitted by the Attorney General's office, post-hearing.
 FINDINGS OF FACT
1. On 16 November 1992, R. Lee Development Corporation was incorporated through the North Carolina Office of the Secretary of State, with Albert L. Fielders and Rick J. Lee named as directors. On 15 December 1992, the corporation changed its name to Stonehenge Development and Design Company (defendant corporation herein). Stonehenge Development and Design Company constructed 40 to 50 residential homes until it ceased business in early 1997.
2. The principal officers of defendant corporation were defendant Rick Lee, President, and Albert L. Fielders, Vice President/Secretary.
3. Defendant Lee was the sole shareholder of defendant corporation. There is no credible evidence that stock was issued or any dividends paid.
4. At the time of plaintiff's injury on 2 August 1995, defendant corporation had three or more employees.
5. At all times relevant to this claim, defendant Lee was employed as a commercial airline pilot for U.S. Airways, Inc. Nevertheless, except for day to day construction decisions and payment of subcontractors and suppliers, which were delegated to Fielders, defendant Lee had decision-making authority with respect to policy, finances, and business practice.
6. Due to cash flow problems, defendant Lee made a conscious decision not to pay workers' compensation premiums and to allow defendant corporation's workers' compensation policy to lapse on 25 February 1994. The Commission does not accept as credible defendant Lee's testimony that, before plaintiff's August 1995 injury, he did not know that the company did not have a workers' compensation policy in force. Lee specifically directed Fielders not to pay the workers' compensation premium, and Fielders believed that he had no viable choice but to follow that order.
7. Before his injury, plaintiff performed tasks at defendant Lee's personal residence. These tasks were performed for defendant Lee personally and not for the corporation. Plaintiff was paid from corporate funds for these tasks. In addition, defendant Lee used corporate funds to pay for personal education courses. These payments constitute improper commingling of corporate and personal funds.
8. Although there likely were informal discussions among Lee and Fielders regarding business issues from time to time, there were no formal directors and shareholders meetings and no minutes prepared of those meetings. On one occasion in August 1995 Lee prepared minutes for three years of purported directors/shareholders meetings. The preparation of those minutes was a sham effort to prove compliance with corporate formality.
9. Following his compensable injury, plaintiff received weekly total disability compensation benefits from 3 August 1995 through approximately 7 August 1996. Defendant Lee made the decision to discontinue plaintiff's compensation benefits. Defendant Lee refused to pay plaintiff's medical bills. Defendant Lee nevertheless made the decision to pay himself $12,000 in December 1995 from corporate funds.
10. Stonehenge Homes, Inc., was incorporated on 9 November 1995. R. Lee Development Company was incorporated on 22 March 1996. There is insufficient evidence that assets were conveyed from defendant corporation to either of the subsequent corporations, wrongful or otherwise. There is insufficient evidence that these corporations "acted interchangeably."
11. There is insufficient evidence that defendant corporation was undercapitalized. Defendant corporation ceased doing business in January or February 1997 and declared insolvency. There is no evidence of corporate dissolution.
12. At the first Full Commission de novo hearing, defendant Lee did not advise the Commission that he had destroyed many business records in 1997, despite the fact that the Commission ordered him to produce various records. The Commission does not accept as credible defendant Lee's testimony that he destroyed checking account and other records because of lack of storage space. These records were likely destroyed because they were incriminating on the issue of Lee's disregard for the corporate form and thereby his personal liability.
13. The location of defendant corporation's office at defendant Lee's personal resident is not a fact relevant to defendant Lee's personal liability. The fact that Lee was the sole owner of the corporation does not tend to show that Lee should be held personally liable for plaintiff's damages.
14. Defendant Lee's and Al Fielders' post-injury discussions with attorneys representing the corporation are not relevant or material to the issue of whether the corporate veil should be pierced; rather, defendant Lee and Fielders appropriately had discussions with their attorneys concerning all legal issues, including potential personal liability.
15. At all times relevant to this claim, defendant Lee had the ability and authority to bring defendant corporation into compliance with G.S. § 97-93.
16. Defendant Lee had control over the finances, policy and business practice of defendant corporation, including the decision whether to maintain workers' compensation insurance.
17. Defendant Lee used his control over defendant corporation to perpetrate the violation of the corporation's statutory duty to maintain workers' compensation insurance, in contravention of plaintiff's legal rights.
18. Defendant Lee's willful decision not to pay defendant corporation's workers' compensation premium and to allow the policy to lapse was the proximate cause of the unjust loss of plaintiff's legal rights to compensation under the Act.
19. Plaintiff's injury by accident, a fall from a scaffold, resulted in a closed head injury, a compression fracture of L1 with compromise of the spinal canal, and a head laceration. He required immediate back surgery for placement of internal fixation and a multi-level fusion. As a result of his injury by accident, plaintiff incurred substantial medical expenses in excess of $75,000.00, and medical expenses continue.
20. As a result of his injury by accident, plaintiff is unable to return to heavy labor. He has permanent restrictions due to the number of spinal segments included in the fusion. He has permanent lower extremity weakness, saddle anesthesia, and bowel and bladder incontinence.
21. Plaintiff reached maximum medical improvement on 5 August 1996, with a permanent partial disability rating of 40% of the back and 40% of both lower extremities.
22. From 10 August 1996 through 20 September 1996, plaintiff returned to work for The Village Conference Center, Inc. From October 1996 through 13 December 1996, plaintiff worked for Doug Greer Stables. Plaintiff began working for Designer Groundcovers, Inc., on 23 January 1997 and continued to be so employed by Designer Groundcovers as of the date of the hearing before the deputy commissioner. This employment is at less than his pre-injury average weekly wage. It does not appear that plaintiff claims permanent and total disability.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Commission has jurisdiction over this action, and the parties are subject to and bound by the Act. G.S. § 97-2 et seq.
2. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 2 August 1995. G.S. § 97-2(6).
3. Defendant corporation was the mere instrumentality or alter ego of defendant Rick J. Lee whose complete domination and control extended to the decision to fail to maintain workers' compensation insurance, in violation of the corporation's statutory duty and plaintiff's legal rights; accordingly, the corporate form will be disregarded and liability imposed on defendant Rick J. Lee personally. G.S. §§ 97-93, -94;Glenn v. Wagner, 313 N.C. 450, 329 S.E.2d 326 (1985); Postell v. BDConstruction Co., 105 N.C. App. 1, 411 S.E.2d 413 (1992).
4. As a result of his compensable injury, plaintiff is entitled to weekly total disability compensation in the amount of $203.20 per week from 2 August 1995 through 5 August 1996, when plaintiff reached maximum medical improvement, subject to an offset for wages which defendants previously voluntarily paid during this time period. G.S. § 97-29.
5. As a result of his compensable injury, plaintiff is entitled to elect from the following remedies: either weekly partial wage loss benefits in the amount of the difference between his pre-injury weekly compensation rate of $203.20 and two-thirds of his weekly earnings at post-injury employment from 5 August 1996 and continuing up to 300 weeks from the date of injury (G.S. § 97-30); or, 280 weeks of benefits at the rate of $203.20 for plaintiff's permanent disability rating of 40% of the back and 40% of both legs (G.S. § 97-31).
6. As a result of his compensable injury, plaintiff is entitled to have defendant Lee pay for all medical and rehabilitative treatment arising from plaintiff's injury by accident to the extent that such treatment tends to effect a cure, give relief, or lessen plaintiff's disability. G.S. § 97-25. There is a substantial risk that plaintiff will need future medical compensation and such benefits are so ordered. G.S. § 97-25.1.
7. As defendant Lee had the ability and authority to bring defendant corporation in compliance with its legal obligation to secure workers' compensation insurance and willfully and intentionally refused to do so as of the date of plaintiff's injury, defendant Lee should be assessed a civil penalty by the Commission in the amount of $20,000, which the Commission notes is less than half of plaintiff's permanent partial disability rating. G.S. § 97-94(d).
8. As a result of defendant Lee's willful failure to maintain workers' compensation for defendant corporation, he is obligated to pay a $50.00 per day fine beginning 25 February 1994 and continuing through 2 August 1995. G.S. § 97-94(b).
9. In its discretion, the Commission will waive the civil penalties, contained in Conclusions of Law 7 and 8, if defendant pays plaintiff the compensation owed within 45 days of the filing date of this Opinion and Award, as indicated in the Award below. G.S. § 97-94(e).
10. The Commission finds that the compensation owed by defendant to plaintiff has priority over and should be paid prior to the civil penalties of the Commission. Should there be insufficient assets to satisfy all sums owed under this Award, the claims of plaintiff shall first be satisfied before any civil penalties are paid to the Commission.
 ***********
Based on the foregoing, the Full Commission enters the following:
 AWARD
1. Defendant Lee shall pay plaintiff weekly total disability compensation in the amount of $203.20 per week from 2 August 1995 through 5 August 1996, subject to an offset for wages which defendants voluntarily paid, and subject to a deduction for attorney's fees awarded herein. This amount has accrued and shall be paid in a lump sum, after deducting attorney's fees to be paid directly to plaintiff's counsel as awarded herein. If there is no outstanding amount owed, no attorney's fees are awarded on this portion of the award.
2. Defendant Lee shall pay plaintiff, at plaintiff's election, either: weekly partial wage loss benefits in the amount of the difference between his pre-injury weekly compensation rate of $203.20 and two-thirds of his weekly earnings at post-injury employment for up to 300 weeks from the date of injury; or, 280 weeks of benefits at the rate of $203.20 for plaintiff's permanent loss of use of his back and legs. These benefits are subject to the attorney's fees approved herein. To the extent that these benefits are accrued, or should plaintiff elect the 280 weeks of benefits based on his permanent impairment ratings, the benefits shall be paid in a lump sum.
3. Defendant Lee shall pay all related medical expenses including rehabilitative treatment for so long as such examinations, evaluations, and treatments are reasonably necessary to effect a cure, give relief or tend to lessen plaintiff's disability, when bills for the same have been submitted to the Commission in accordance with Commission procedures. These benefits shall continue pursuant to G.S. § 97-25.1.
4. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the sums due plaintiff is awarded to plaintiff's counsel. This amount shall be deducted from the lump sum awarded and paid directly to plaintiff's counsel. For weekly benefits awarded plaintiff which have not accrued, if any, every fourth check shall be paid directly to plaintiff's counsel.
5. Defendant Lee shall pay a civil penalty to the Commission in the amount of $20,000.00 for his willful failure to maintain workers' compensation insurance for defendant corporation. Defendant Lee shall also pay a civil penalty in the additional amount of $26,200, based on a $50.00 per day assessment during the period when workers' compensation coverage had lapsed. These amounts shall be made by check payable to the North Carolina Industrial Commission and sent to the attention of Kay Emanuel at the Industrial Commission, subject to the following waiver: If defendant Lee pays the compensation awarded in paragraphs 1, 2 and 3 above within 45 days from the filing date of this Opinion and Award, then the Commission hereby waives the assessment of all civil penalties.
6. If it is determined in related civil proceedings that defendant Rick J. Lee fails to have assets sufficient to satisfy the award to plaintiff and the civil penalties to be paid to the Commission, payment of the award to plaintiff shall have priority over and shall be paid before the civil penalties are paid to the Commission.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER