***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback, with modifications.
 ***********
Pertinent portions of the Pre-trial Agreement are set forth herein and are identified as such. At that same hearing, the plaintiff and defendants also presented the following exhibits which were all admitted into evidence:
 1. Pretrial Agreement (Stipulated Exhibit 1)
 2. Plaintiff's Deposition Transcript (Stipulated Exhibit 2)
 3. Plaintiff's Wage Information (Stipulated Exhibit 3)
The parties agreed that plaintiff's counsel would submit the following post-hearing, and that exhibit has been received into the record.
 4. I.C. Form 22 showing plaintiff's 2004 earnings (Stipulated Exhibit 4)
 The issues to be decided are the following:
 1. What is the correct calculation of plaintiff's average weekly wage?
 2. What amount of temporary total disability benefits are currently owed to plaintiff?
 *********** STIPULATION OF UNDISPUTED FACTS
The parties have stipulated in the pretrial order as to the following undisputed facts, and the Full Commission finds the same as fact and concludes the same as matters of law:
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of parties.
3. Plaintiff suffered a compensable injury by accident on September 8, 2004.
4. Defendants filed a Form 63 Notice to Employee of Payment of Compensation Without Prejudice on November 15, 2004 and began paying weekly temporary total disability (TTD) benefits of $251.21, based on an average weekly wage rate of $376.81.
5. Defendants continued the above-referenced TTD benefits until plaintiff began a trial return to work for defendant employer on or about April 18, 2005.
6. Plaintiff has been unable to work, pursuant to the treating physician's recommendations, since on or about August 20, 2005.
7. Defendants are currently paying Mr. Mata Zavala weekly temporary total disability benefits in the amount of $139.23, based on defendants' current calculation of an average weekly wage of $208.83.
8. The parties have resolved the issues of defendants' prior unilateral termination of plaintiff's TTD benefits and failure to respond to discovery, raised by plaintiff's November 22, 2005 Motion to Compel, so that Motion is no longer before the Full Commission.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff Eduardo Mata Zavala (hereinafter "plaintiff") first came to North Carolina as an agricultural worker pursuant to 8 U.S.C. § 1101
(a) (15) (H) (ii) (A) (hereinafter "H2A") in 1996, and returned every year thereafter through 2005 as an H2A worker to work for the same employer, Defendant Cecil Stephenson.
2. The H2A visa was solicited by the North Carolina Growers' Association ("NCGA"), and the NCGA also wrote the employment contract defining the terms under which Mr. Mata Zavala was to work for Stephenson.
3. The NCGA and Stephenson determined where and under what terms plaintiff worked during the entire period of his employment with Stephenson.
4. Pursuant to the relevant federal regulations, the employment contract and the H2A visa issued to plaintiff, each year that he worked in North Carolina, plaintiff arrived in the spring or early summer (between April and the first of July) and returned to his home country of Mexico at the end of the tobacco or sweet potato season, in the late fall (September or November). Therefore, defendant employer knew that plaintiff's employment period with defendant would always be fewer than 52 weeks in duration.
5. Furthermore, by law, only the NCGA and/or Stephenson could arrange for an extension of plaintiff's visa and employment past the dates defined by the visa issued pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(A).
6. On September 8, 2004, while working for Stephenson, plaintiff fell from the top of a tobacco packer, landing on his left side and injuring his left shoulder.
7. Plaintiff was unable to work at all due to his compensable injury from September 8, 2004 following the accident, until April 18, 2005, when Stephenson and the NCGA again solicited his employment as an H2A worker for the 2005 season.
8. During that time of total disability, defendants paid plaintiff weekly temporary total disability ("TTD") benefits of $251.21, based on an average weekly wage of $376.81.
9. During the entire period in which plaintiff worked for Stephenson from April 18, 2005, until he was taken out of work due to his injuries by the authorized treating physician on or about August 20, 2005, plaintiff was unable to use his left hand and arm, due to his compensable injury. Defendants did not reinstate payment of TTD benefits until on or about November11, 2005, and did not file a Form 62 agreeing to payment of continuing TTD until after plaintiff filed a Motion to Compel pursuant to Industrial Commission Rule 404(a).However, when that Form 62 was filed it reflected payment of TTD benefits at a substantially lower rate based upon an alleged average weekly wage ("AWW") of $208.83.
10. Defendants calculated the new compensation rate using an average weekly wage of $208.83, which was arrived at by dividing by 52 the total amount defendants contend plaintiff would have earned "but for" his compensable injury, in 2004.
11. Plaintiff's earnings over the 20.29 weeks he worked as an H2A tobacco worker in 2004 were $7,750.24, based on Exhibit 4, I.C. Form 22.
12. The correct method for calculating plaintiff's average weekly wage is the "third method" set forth under N.C. Gen. Stat. § 97-2(5), which divides the plaintiff's earnings from the employment in which he was injured in the weeks prior to the injury by the actual number of weeks and parts thereof worked during the same period.
13. Plaintiff's correct average weekly wage is therefore $381.87, which yields a weekly compensation rate of $254.58.
14. Plaintiff is entitled to the difference in disability compensation, based on the correct calculation of his average weekly wage.
15. This appeal was brought by the insurer and the Full Commission by this Opinion and Award orders the employer and insurer to continue disability payments to plaintiff. The Full Commission has authority pursuant to N.C. Gen. Stat. § 97-88 to award attorney's than the into a fees to plaintiff's attorney for his time and expenses in defending this appeal.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The correct method for calculating plaintiff's average weekly wage is the "third method" set forth under N.C. Gen. Stat. § 97-2(5), which divides the plaintiff's earnings from the employment in which he was injured in the weeks prior to the injury by the actual number of weeks and parts thereof worked during the same period. N.C. Gen. Stat. §97-2(5).
2. Plaintiff's correct average weekly wage is therefore $381.87, which yields a weekly compensation rate of $254.58. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff is entitled to the difference in disability compensation based on the correct calculation of his average weekly wage and to a 10% penalty for late payment.
4. Defendants' calculation of plaintiff's AWW is incorrect for at least two reasons.
 (1) First, defendants' calculation is erroneous where it uses the "last resort" allowed by N.C. Gen. Stat. § 97-2(5) without demonstrating that each of the four preceding statutorily-prescribed methods for calculating the plaintiff's AWW are not appropriate in this case. Both the Full Commission and the North Carolina appellate courts have consistently interpreted N.C. Gen. Stat. § 97-2(5) to set out a hierarchical order of five methods for calculating an injured worker's average weekly wage. See Loch v. Entertainment Partners, 148 N.C. App. 106, 110, 557 S.E.2d 182, 185 (2001) ("It is clear from the language of the statute and the prior holdings of this Court that N.C. Gen. Stat. § 97-2(: establishes an order of preference. . . . "); McAnich v. Buncombe County Schools, 122 N.C. App. 679, 681, 471 S.E.2d 441, 443 (1996) overruled on other grounds, 347 N.C. 126, 489 S.E.2d 375
(1997). The defendants have not demonstrated that it would be "impractical" to compute the plaintiff's AWW based upon "the shortness of time during which" he was employed by the defendant employer or based upon the "casual nature or terms of his employment". See N.C. Gen. Stat. § 97-2(5). The defendants have also not demonstrated that a "fair and just" result to both parties would not be obtained by using the third AWW calculation method that the Full Commission has already approved in I.C. No. 164967, Jose Guadalupe Melendez-Torres v. Jeffery J. Smith and James C. Greene Co., (hereinafter, "Melendez-Torres") (filed February 12, 2004).
 (2) Second, defendants have failed to show "exceptional reasons" as required by N.C. Gen. Stat. § 97-2(5) why the third method of calculation is unfair to the defendants. On the contrary, use of the third method is a clearly appropriate measure of the plaintiff's "earning capacity" in H2A employment at the time that he was injured. See Derebery v. Pitt County Fire Marshall, 318 N.C. 192, 197, 347 S.E.2d 814, 817
(1986) ("Derebery"). As our Supreme Court held in Derebery, ". . . the purpose of the average weekly wage basis [is] as a measure of the injured employee's earning capacity." According to the 30-year old holding of our Supreme Court in Liles v. Electric Co., 244 N.C. 653, 660, 94 S.E.2d 790, 796 (1956)("Liles"), that "earning capacity" is measured by "the employment in which he [the injured worker] was working at the time of his injury." Id. In this case, that employment was H2A agricultural employment whose temporal length was subject to variation or extension by the defendant employer from the very beginning of that employment, but which had". . . a predetermined period of less than 52 weeks" of employment. See McAninch v. Buncombe County Schools, supra, 471 S.E.2d at 444. From the evidence relating to the defendant-employer's employment of this plaintiff for a period of 10 years under the H2A program, it is obvious that the defendant employer knew that the term of Mr. Mata-Zavala's H2A employment would be less than 52 weeks. That fairness is further evidenced by the defendant carrier's use of the third method when it first filed and paid TTD.
5. Defendants' argument that the North Carolina Supreme Court's decision in Joyner v. A.J. Carey Oil Company, Inc. and Employers MutualCas. Co., 266 N.C. 519, 146 S.E. 2d. 447 (1966)("Joyner"), and the decision of our Court of Appeals in Postell v. BD Constr. Co.,105 N.C.App. 1, 4, 411 S.E.2d 413 (1992)("Postell"), regarding calculation of an injured worker's AWW supports their position is without merit.Postell is easily distinguished for at least two reasons. The first is that the injured worker's work as a housing framer in that case was deemed so "sporadic" that "calculations under this method [the "so-called" third method of calculating AWW] would be mere speculation of what he would have earned had he not been injured." Postell,105 N.C.App. at 6, 411 S.E.2d at 416. The second is that Mr. Postell was not an H2A worker whose period of employment was set by an H2A visa to last for approximately 26-30 weeks on a continuous, uninterrupted basis which could be expanded or reduced by his employer based purely upon the length of the H2A employment visa that the defendant employer in that case sought for Mr. Postell. Instead, Mr. Postell was an employee whose period of employment had been previously set for a period to last substantially less than 52 weeks (in his case his period of employment actually lasted for only 4 weeks) with both parties knowing from the outset of their employment relationship that the defendant employer in that case would not provide continuous, uninterrupted employment to Mr. Postell for any substantial period of time. See Postell, supra,105 N.C.App. at 6, 411 S.E.2d at 416. Thus, Mr. Postell's employer, unlike the plaintiff's, did not provide Mr. Postell with any pre-determined, uninterrupted, continuous period of less than 52 weeks that he was to be available to work for defendant employer, as Mr. Mata-Zavala was under his employment contract and H2A visa with Mr. Stephenson. SeeMcAnich v. Buncombe County Schools, supra, 471 S.E. 2d. at 444 (distinguishing the Joyner decision upon which Postell relied for the same reason, and finding that the "Joyner Court's holding is entirely dependent upon its determination that the plaintiff's employment could not be considered one with a `period of less than 52 weeks"). Similarly, the Joyner decision must also be distinguished from the present case in at least two respects. First, as a matter of law: based on the evidence provided by the defendant in Joyner as to certain slack periods during which the defendant employer in that case clearly established that it would not have provided any employment to the injured worker in that case, the Joyner court came to the conclusion that the first four AWW calculation methods would be unfair to defendant employer, and thus applied the last AWW calculation method which the defendants also sought to invoke here. See Joyner, 266 N.C. at 521-22. In the present case, defendants have presented no testimony or other evidence to show that the third method would be unfair to the defendant employer in this case based upon any particular "slack" time period(s) of employment during the pendency of the plaintiff's H2A visa when the defendant employer would not have provided any employment to the injured worker. On the contrary, as discussed above, defendant employer knew that he would employ Mr. Mata-Zavala for less than 52 weeks per year on an uninterrupted and continuous basis during the time period that his H2A visa was valid, and indeed continued to employ him for the same less-than-52-week, uninterrupted, and continuous basis for 10 years. Perhaps even more telling of the fairness to defendants is the defendant carrier's apparent use of the third method when it filed the Form 63 — which occurred before they were represented by defense counsel, and before plaintiff filed a claim for ongoing TTD benefits.
6. Since this appeal was brought by the carrier and since by this Opinion and Award the Full Commission orders the employer and insurer to continue disability payments to plaintiff, the Full Commission has authority pursuant to N.C. Gen. Stat. § 97-88 to award attorney's fees to plaintiff's attorney for his time and expenses in defending this appeal.
 ***********
Based upon the foregoing, the Full Commission enters the following:
 AWARD
1. Subject to reasonable attorney fees awarded herein, defendants shall immediately pay to plaintiff the difference owed to him in past-due temporary total disability benefits, plus a ten percent (10%) late payment penalty, based on the correct average weekly wage as described herein. Said amount shall be paid in one lump sum.
2. Defendants shall continue to pay plaintiff weekly temporary total disability benefits at the rate of $254.58, until plaintiff returns to suitable employment or until further Order by the Industrial Commission.
3. A reasonable attorney fee equal to twenty-five percent (25%) of the sums due plaintiff under this AWARD is approved and shall be paid as follows: defendants shall deduct twenty-five percent (25%) of the lump sum otherwise due plaintiff and shall pay such amount directly to plaintiff's counsel; thereafter, defendants shall pay to plaintiff's counsel every fourth check due the plaintiff.
4. The Full Commission will enter an Order regarding attorney's fees for plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88 after receipt of and consideration of plaintiff's attorney's affidavit with respect to time spent and expenses incurred.
5. Defendants shall pay the costs.
This 24th day of October 2006.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/________________________ BUCK LATTIMORE CHAIRMAN
 S/_______________________ PAMELA THORPE YOUNG COMMISSIONER