* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into as: *Page 2 
 STIPULATIONS
1. On July 7, 2000, plaintiff sustained an injury by accident at work resulting in paraplegia of his lower extremities.
2. The parties are bound by and subject to the Workers' Compensation Act.
3. Plaintiff reached maximum medical improvement on April 2, 2005 and is permanently and totally disabled pursuant to N.C. Gen. Stat. §97-31(17) as a result of his injury by accident on July 7, 2000.
4. The following stipulated exhibits were admitted into evidence:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Insurance Agent Documents
 c. Stipulated Exhibit #3 — Deposition of William Jason Cherry
 d. Stipulated Exhibit #4 — Deposition of Mark Alan Poteat
 e. Stipulated Exhibit #5 — Deposition of David Andrew Tynes
 * * * * * * * * * * * EVIDENTIARY RULING
For failure to comply with Rules 608 and 614 of the Workers' Compensation Rules of the North Carolina Industrial Commission, the Full Commission affirms the ruling of the Deputy Commissioner to exclude the testimony of Vicki Crouse, an insurance adjuster for Travelers Insurance Company, the third-party administrator for Reliance Insurance Company. Reliance Insurance Company had insured defendant-employer for workers' compensation purposes but subsequently filed for bankruptcy. Ms. Crouse had contacted plaintiff without advising him that his statement would be used in part to determine whether his claim would be paid or denied in *Page 3 
contravention of Rule 608 and without inquiring whether plaintiff was represented by counsel in contravention of Rule 614.
 * * * * * * * * * * *
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the first hearing before the Deputy Commissioner on March 17, 2003, plaintiff was 25 years of age. He has a high school education.
2. In late 1997 or early 1998, at the age of 19 or 20, plaintiff began working for Arbor Pros in Durham, North Carolina. About a year later, he left Arbor Pros and began working for Autobahn Tree Service, where he stayed approximately six months, at which time he left to work for Barney's Tree Expert.
3. While working for Barney's Tree Expert, plaintiff also began working for defendant-employer. Four to six months later, plaintiff stopped working entirely for Barney's Tree Expert but continued to work for defendant.
4. During all times that plaintiff worked for defendant-employer, the company performed a variety of services, including landscaping, mulching, mowing, and "tree work" or the removal of trees from property.
5. In its Yellow Page advertising, defendant-employer specifically held itself out as a business that did tree work. Defendant-employer has been doing business as Triangle Landscape and Design since approximately 1994.
6. Initially, defendant-employer had no regular employees. Sometime in 1999, defendant-employer hired its first regular employees, namely two full-time employees who were *Page 4 
a father and son. Since then, defendant-employer also hired two other employees, who are considered to be "part-time." Defendant-employer has always paid its employees in cash and has never taken any withholdings from any of its employees' earnings.
7. Plaintiff began working for defendant-employer in late 1999 or early 2000. At first, plaintiff performed landscaping, brush removal, and even clean up of a creek, in addition to light tree work; however, over time, plaintiff began doing more significant tree removal work.
8. During all times that plaintiff worked for defendant-employer, he worked sporadically. For example, there were some months when plaintiff worked only twice for defendant-employer and other months when he did not work at all. On average, plaintiff worked for defendant-employer about one day per week for about five to eight hours. Despite plaintiff's sporadic hours, defendant-employer always decided the date and window of time during which plaintiff's work was to be done.
9. Plaintiff was paid by the hour for his work. Over the course of his employment with defendant-employer, plaintiff's pay increased from fifteen dollars an hour to fifty dollars an hour.
10. While plaintiff was doing tree work for defendant-employer, he was instructed on the details of his work, such as "to cut this limb, this limb, and this limb. . ." Defendant-employer would also supervise to make sure that plaintiff was doing the job the way defendant-employer had arranged to have it done.
11. Javier Fernandez, the younger of defendant-employer's two full-time regular employees, often assisted plaintiff while he was working for defendant-employer. When Javier Fernandez or any other employees of defendant-employer assisted plaintiff with tree work, they always stayed on the ground because defendant-employer would not allow them to climb the *Page 5 
trees. At most, there was only one time that plaintiff was unable to do the work that defendant-employer requested him to do and that was because plaintiff did not have the expertise or ability to do the work properly and safely.
12. Except for plaintiff's personal belt, climbing saw, and climbing rope, defendant-employer owned all other equipment utilized by plaintiff while working for defendant-employer. Furthermore, whenever Javier Fernandez or any other employees of defendant-employer assisted plaintiff with tree work, those employees also used defendant-employer's equipment. Using its own equipment, defendant-employer disposed of debris that remained from plaintiff's tree-cutting work.
13. Prior to his accident in July of 2000, plaintiff aspired to have his own tree cutting business some day, which he planned on naming "Cherry's Tree Service"; however, this never materialized.
14. On July 7, 2000, while doing tree work for defendant-employer, plaintiff fell to the ground from the tree he was cutting and sustained a spinal cord injury that resulted in paraplegia of his lower extremities.
15. While the greater weight of the evidence reveals that plaintiff was a casual employee, the Full Commission finds that plaintiff is not excluded from coverage under the Workers' Compensation Act since the work he performed for defendant-employer was in the course of the trade, business, profession, or occupation of defendant-employer.
16. The Full Commission gives greater weight to plaintiff's testimony, which is also corroborated by the testimony of David Alan Tynes, who was the only non-party to testify in this matter. *Page 6 
17. Plaintiff's accident occurred on July 7, 2000, before plaintiff had worked for defendant-employer for 52 weeks. Therefore, the first two methods of calculating plaintiff's average weekly wage provided in N.C. Gen. Stat. § 97-2(5) are inappropriate.
18. During his period of employment, plaintiff's exact earnings and the specific days that he worked are not known because defendant-employer kept no records and did not file Internal Revenue Service Forms 1099 or W-2. Therefore, the third method of calculating plaintiff's average weekly wage provided in N.C. Gen. Stat. § 97-2(5) would be inappropriate since the number of weeks plaintiff worked for defendant-employer and the amount received is unknown.
19. With regard to the wages of other employees, the record only contains evidence of other employees whose average weekly wage is based upon working 40 hours a week and whose responsibilities were dissimilar. Therefore, the fourth method of calculating plaintiff's average weekly wage provided in N.C. Gen. Stat. § 97-2(5) is also inapplicable as there are not any employees who are similarly situated when compared to plaintiff.
20. In exceptional circumstances, where it is impractical to compute plaintiff's average weekly wage according to the preceding methods, the Full Commission may resort to the method that most closely approximates the amount which plaintiff would be earning were it not for his injury. Therefore, based on the competent evidence of record and utilizing the fifth method under N.C. Gen. Stat. § 97-2(5), the Full Commission finds that plaintiff worked an average of 5 to 8 hours per week for defendant-employer, resulting in an overall average of 6.5 hours of work per week and that at the time of his injury, plaintiff was earning approximately $50.00 an hour, yielding a average weekly wage of 325.00 per week.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. At the time of his injury by accident on July 7, 2000, plaintiff was an employee of defendant-employer. N.C. Gen. Stat. § 97-2(2).
2. While the evidence reveals that plaintiff was a casual employee, plaintiff is not excluded from coverage under the Workers' Compensation Act since the work he performed for defendant-employer was in the course of the trade, business, profession, or occupation of defendant-employer.Clark v. Waverly Mills, Inc., 12 N.C. App. 535, 183 S.E.2d 855 (1971); N.C. Gen. Stat. § 97-2(2).
3. Under N.C. Gen. Stat. § 97-2(5), compensation for the injury of an employee is based on his average weekly wage. "Average weekly wages" is defined as the earnings of an injured employee in the employment in which the employee was working at the time of injury. The primary intent of N.C. Gen. Stat. § 97-2(5) is to base compensation on the normal income which the employee derived from his employment and that the results be fair and just to both employer and employee. N.C. Gen. Stat. § 97-2(5); Joyner v. A.J. Carey Oil Co., 226 N.C. 519, 146 S.E.2d 447
(1966); Barber v. Going West Transportation, Inc., 134 N.C. App. 428,517 S.E.2d 914 (1999).
4. N.C. Gen. Stat. § 97-2(5) establishes an order of preference for the calculation of an average weekly wage. The primary method for determining average weekly wage is to divide by fifty-two the total wages of the employee for the fifty-two weeks preceding the date of the injury. Bond. V. Foster Masonry, Inc., 139 N.C. App. 123, 532 S.E.2d 583
(2000). In cases in which the preferred first method under N.C. Gen. Stat. § 97-2(5) is inappropriate, the statute *Page 8 
provides three additional methods to use in the calculation of a worker's average weekly wage. The fifth method set forth in the statute is to be used when warranted by "exceptional reasons." Postell v.BD Construction Co., 105 N.C. App. 1, 7, 411 S.E.2d 413, 416, disc.review denied, 331 N.C. 286, 417 S.E.2d 253 (1992).
5. In this case, the first two methods of calculating plaintiff's average weekly wage provided in N.C. Gen. Stat. § 97-2(5) are inappropriate because plaintiff was employed for less than one year before the date of injury. The third method would be inappropriate since the number of weeks plaintiff worked for defendant-employer and the amount received is unknown. The fourth method of calculation is also inapplicable as there are not any employees who are similarly situated when compared to plaintiff. N.C. Gen. Stat. § 97-2(5).
6. By reason of the shortness of time and casual nature and terms of his employment with defendant-employer, it is impractical to compute plaintiff's average weekly wage according to the preceding methods; therefore, as an exceptional circumstance, the Full Commission may resort to the method that most closely approximates the amount which plaintiff would be earning were it not for his injury. Based upon the competent evidence of record, plaintiff worked an overall average of 6.5 hours per week, earning $50.00 per hour. Applying the fifth method under N.C. Gen. Stat. § 97-2(5), this yields $325.00 per week with an average weekly wage of $216.68. Moreover, determining plaintiff's average weekly wage based upon his average hours and rate of pay at the time of his injury most nearly approximates the amount plaintiff would be earning were it not for his injury and thus produces the most fair and just result for both parties. N.C. Gen. Stat. § 97-2(5). *Page 9 
7. On July 7, 2000, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer, resulting in paraplegia of his lower extremities. N.C. Gen. Stat. § 97-2(6).
8. As a result of his compensable injury by accident, plaintiff is disabled and is thus entitled to compensation at the rate of $216.68 per week beginning July 7, 2000 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
9. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay total disability compensation to plaintiff at the rate of $216.68 per week for the period beginning July 7, 2000 and continuing until further Order of the Commission. Compensation that has accrued shall be paid in a lump sum, also subject to the attorney's fee.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of the compensable injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one *Page 10 
lump sum for the accrued amount due plaintiff and thereafter by deducting every fourth compensation check due plaintiff.
4. Defendants shall pay the costs due the Industrial Commission.
This the ___ day of January 2007.
 S/________________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________________ BUCK LATTIMORE CHAIRMAN *Page 1